On the 28th, the J udge delivered the following opinion :
Dube, J.
Having dismissed as groundless the original charge of kidnapping, this case is now before me solely upon the petition of the father, by his agent, Hr. Tappan, and the relief which is now sought is a compulsory order for the delivery of the child, Jane Trainer, into his custody. The first and by far the most important question to be determined is, whether my jurisdiction, which is precisely the same as that conferred by statute on Supreme Court Commissioners, extends so far as to enable me to make the order that is required ;.and if this question must be answered in the negative, it will be needless to inquire whether, upon the evidence before me, such an order could be justly or discreetly made.
I entirely agree with the learned counsel for the respondent, that I am not sitting here as a judge in equity, clothed with those large discretionary powers, in relation to the disposition and custody of infants, which the Lord Chancellor of England, as the representative of the sovereign, is competent and has been long accustomed to exercise.
Powers just as extensive, I doubt not, were vested in our late Court of Chancery, and if so, by forcé of the Hew Constitution and of the Judiciary Act of 1817, they have been transferred to, and are now vested in, the Supreme Court of the State, and the justices thereof; but they do not belong to me, either as a Supreme Court Commissioner, or as a judge of the -Superior Court; I cannot therefore exercise the discretion which they confer, even could I be justified in acting, at the same time and in the same proceeding, in a double capacity. The Supreme Court, as succeeding to the entire jurisdiction of the chancellor, is the general guardian of infants, and as such, has the exclusive right to determine all questions, in relation to their disposition and custody, except where those questions properly arise in an action between husband and wife, for an absolute or limited divorce. It is true, that the Superior Court is now a court of equity; but it is equally so, that its equitable powers can only be exércised in those actions or proceedings which its jurisdiction, as defined by the Code, may be construed to embrace.
The petition for the habeas corpus, in the present case, was founded, and could only be founded, upon the provisions of the Revised Statutes; and as, in its form, it followed the words of *712 the statute, those provisions not merely gave me the right, hut made it my duty, to allow the writ. It is under the statute, therefore, that I am acting, and it is upon the just construction of its provisions that the nature and extent of my authority alone depend. I can act only in the cases which the statute enumerates and defines, and can make no other final determination or order than that which it prescribes.
Founding his argument upon the statute, the counsel for the respondent has insisted: '
First. That a habeas corpus under the statute can only be allowed for the purpose of delivering the person, in whose behalf it is prayed for, from an illegal or unjust imprisonment or restraint, and, consequently, ‘when the alleged imprisonment or restraint is denied by the return to the writ, and is not established by the proof, the jurisdiction of the judge or officer who issued the writ wholly ceases, and he is bound to declare that the proceedings before him are at an end. And,
Secondly. That where the imprisonment or restraint is admitted or proved, and is held to be illegal, the only order that can be made, is for the discharge of the person so imprisoned or restrained; and that an order, even in the case of a minor or apprentice, relative to his future disposition or custody, as an excess of authority, would be absolutely void.
If the positions thus taken by the counsel are a just construction of the statute, it is a necessary consequence, that I cannot grant' to the relator the relief which he seeks, by a peremptory order for the immediate delivery of the child into his custody, or into that of the father. If a habeas corpus under the statute may be properly used for the sole purpose of maintaining the rights of a- parent and enforcing the obedience of a child, the order which is prayed for may justly be made; but not, if the sole object of the writ, in a case like the present, is the delivery of the child from imprisonment or restraint.
The learned counsel for the relator, in controverting the positions that have been stated, deemed it unnecessary to refer to the actual provisions of the statute, but contended that the questions that have been raised as to their construction, and the extent of the authority which they confer, can no longer be regarded as open. He insisted that it is settled law—settled *713 by a long series of decisions both in England and in the United States—that an officer, acting under the statute, possesses in its fullest extent the jurisdiction which is denied, and that, the rights of the father being established, not merely have I the power, but am bound to make the order which he solicits. These views of the learned counsel, I am inclined to think, correspond with what has hitherto been the general understanding of the bar; and I freely own, that, when the proceedings commenced, I had no doubt of my authority to make such an order for the custody of the child, as, under all the circumstances of the case, I might deem to be expedient. I believed myself to possess exactly the same discretion as a court of equity, and this discretion, looking to the future welfare of the child, I was not merely willing, but desirous, to exercise. Having examined the subject, however, in the short intervals of leisure that have been allowed me since the case was opened, with all the attention of which I am capable, I am obliged to declare, that the conclusions to which I have been led are directly opposed to my preconceived opinion. The words of the statute, I am forced to say, allow no room for the exercise of a discretionary power, nor, as I am now persuaded, is any reported case to be found, in which such a construction has been given to them.
The-adjudged cases in the English courts, whatever surprise the assertion may create, are in reality wholly inapplicable; they are inapplicable for the conclusive reason, that, in all of them, without an exception, the habeas corpus was a common law, and not the statutory writ, and the powers exercised by the court those whibh the common law, and not the statute, confers. Upon the question, therefore, that we are now considering, the power and duties of an officer, confined in his jurisdiction and in his actions by the provisions of the statute, these cases, in my judgment, throw no light whatever, and, at any rate, lend no aid to the argument on the part of the relator. The English habeas corpus Act, the celebrated act of Charles H., the second Magna Charta, as it is termed by Blackstone—is the substratum and model of our own statute, and there is not a shadow of evidence that any court or judge, when acting under its provisions, has ever claimed to exercise a discretionary ' power, by making any other order for the disposition óf the *714 person for whose deliverance the writ was issued than those which the words of the act specify and define. The act declares what judgment, according to the circumstances of the case, shall be pronounced at the close of the proceedings, and there is no evidence that any other has ever been given. The habeas corpus act was not framed to regulate the entire subject of which it treats. Its sole objects were to remedy particular abuses, and to relieve a particular class of persons, namely, those committed and imprisoned upon a criminal charge, leaving all other cases of unjust imprisonment or detention, in the words of Blackstone, “ to the habeas corpus at common law.” (3 Common., pp. 137, 138.) Nor is this the only distinction between the common law and the statutory, writ; there are many others, so material, that had they not been overlooked, the erroneous practice which has to some extent prevailed in this State, and which I am urged to follow, could never have arisen.
The common law writ can only be granted upon a motion in court, and whether it shall be granted or refused rests in the discretion of the court (Com. Dig. Tit. H. Corpus [3], pp. 56, 65; 3 Black. Com. 132, 5; Bac. Abrid. Tit. Ha. Cor. [B], 4).
The statutory writ may be granted by a judge in vacation, and must be granted if the application is in the form which the statute prescribes. It is then granted ex débito justítice, and the officer, who refuses to allow it, is subject to a penalty.
The common law writ, it appears from the cases, may be prosecuted by a husband, a parent, and a guardian, for the deliverance of a wfife, a child, or a ward.
The statutory writ is prosecuted by the party for whose deliverance it is issued. The petition, it is true, may be signed by a third person on his behalf; but it is in the name of the prisoner that all the proceedings must regularly be conducted.
Lastly. The common law habeas corpus ad subjiciend/win, requires that the person named shall be brought before the court in which it is returnable, “ to do, submit to, and receive” whatever the court may consider in relation to him. - 3 Black. Comm. 132.
The statutory writ is substantially in the same form, but the discretion which its general words may be construed to give, is * *715 taken away by the positive direction, that when the proceedings are closed, the judgment shall be that the prisoner “be discharged, or bailed, or remanded.” There are other differences, to which it would be useless to advert. It is sufficient to say, what no lawyer will deny, that however large the discretion which the common law may give, either in granting a habeas corpus, or pronouncing judgment upon its return, the same discretion can never be rightfully claimed by an officer acting under a positive law, unless the intention of the Legislature that it may be exercised is expressly or impliedly declared. Hence it is upon the true construction of the statute under which I am acting, that this case wholly turns, and it is only those cases which plainly bear upon this question that can have any application.
But I go still further. Were I at liberty to treat the present as a common law writ, and in pronouncing my judgment to assume the powers, not indeed of the Chancellor, but of a common law court, it is at least exceedingly doubtful, whether I would be justified in making the order that is now desired. Unless I greatly err, the law in England, with a single exception, which I shall hereafter state, is now established, that the jurisdiction of the Queen’s Bench and of the Common Pleas upon the return of a habeas corpus, even when the case is not under the statute, is limited to the discharge of the person where detention or restraint is held to be illegal; and where the restraint is disproved, to a public declaration that he is at liberty to go where he may please, and will be protected by the court in the exercise of his freedom.
The earliest case I shall quote is Rex v. Clarkson (1 Strange, 446). The habeas corpus, returnable in the King’s Bench, was granted upon the application of a husband, and its object was the restoration of his wife to his society and possession. The lady, however, when brought before the court, denied the rights of the person who claimed, to be her husband, and the court ¿aid, that whatever might be his rights, they could make no compulsory order, but could only see that'she was under no illegal restraint, and declare her at liberty to go where she pleased.
In the next case, Rex v. Johnson (1 Strange, 579), the action of the court was somewhat different; the contest related to the *716 custody of a female infant, aged 9 years, and the court, at first, ■doubted whether they could do more than release her from an illegal restraint, but finally made an order for her delivery to her guardian.
. In the succeeding year, however, the Court of King’s Bench retraced its steps, and returned to its original doctrine, Rex v. Smith (2 Strange, 982). The habeas corpus was granted upon the application of a father, who sought to reclaim a minor child, a boy of 13, from the custody of an aunt, with whom he was living. When the parties were before the court, the legal right of the father to the custody being clear, it was insisted that he was entitled to a positive order for the delivery of the child, and the decision in Rex v. Johnson was relied on as a controlling authority. That case, however, the report says, upon full debate, was overruled, and the court said that they could only deliver the child from the control of the aunt, and inform him that he was at liberty to go where he pleased. The boy chose to remain with the aunt, and the court then told the father that he must seek his remedy by action or by some other proceeding.
I have found no case contradicting this limited construction of the powers of the court until the time of Lord Mansfield; but in several cases which carne before his lordship and his brethren, it seems to have been intentionally disregarded and overruled. In the cases to which I refer, the doctrine is laid down or assumed, that, upon a habeas corpus, the court has a full discretion to make such an order as the particular circumstances of the case may seem to require, and may not only decide to whom the custody of an infant shall be given, but may even compel a reluctant wife to return to the house and submit to the authority of her husband (Rex v. Meade, 1 Burr. 542; Rex v. Delaval, 3 Burr. 1434, S. C.; 1 Black, 146; Ward’s case, 1 Black; Blisset’s case, Lofft’s R. 765). But this doctrine, which, if it did not strip the Chancellor of his jurisdiction, vested in the King’s Bench, in the cases to which it applied, a co-ordinate authority, seems not long to have prevailed, and assuredly is not, at this day, the law in England. It was most distinctly rejected by Lord Kenyon and his associate judges in the cases *717 of Rex v. Reynolds (6 Term R. 499), and The King v. Edwards (7 Term R. 745).
In each of these cases the habeas corpus was granted upon the application of a master, who sought, by this means, to compel the return of a disobedient apprentice, but in each the writ was quashed, as it appeared to have been issued without the consent and against the wishes of the apprentice; and Lord Kenyon remarked in the second case, that the sole object of a habeas corpus “ is the protection of the liberty of the party,” in other words, his deliverance from an illegal imprisonment or restraint; evidently meaning that where this fact is shown not to exist, the jurisdiction ceases.
The cases to which I shall next refer are still more decisive, as showing how entirely the courts of common law in England have renounced the exercise of the discretion which was claimed by Lord Mansfield.
In the case of The King v. De Mandeville (5 East, 220), the writ was granted on the application of a mother, who had been driven by ill usage to separate from her husband, and w'ho sought the aid of the court to compel him to restore to her custody an infant of only eight months old, which it was alleged he was about to take with him from the kingdom. The additional circumstances were that the child was a natural born subject and the father an alien enemy. The Court of King’s Bench, however, denied the application, and remanded the child to the father, plainly upon the ground that he had a legal -right to the custody, and consequently that the restraint could not be pronounced illegal.
The failure of this application compelled the mother to invoke the powers of the Chancellor (De Mandeville v. De Mandeville, 10 Vesey, 52); and although Lord Eldon declined, under all the circumstances, to change the custody, he enjoined the father from removing the child from the kingdom, and compelled him to give security to a large amount, that he would obey the injunction. In the course of his opinion, Lord Eldon referred to the former proceedings at law, and said that the court of King’s Bench had very properly declined to interfere, not having within it any of that species of delegated authority *718 which resides in the Chancellor, as representing the King m his beneficent character of Pa/rens Patriae.
This profound jurist, the greatest common as well as equity lawyer of his age, evidently meant that a court of common law, even upon a habeas corpus, can pass only upon the question of legal right, and has no power to grant that equitable relief which the Court of Chancery, as the general guardian and protector of infants, is bound to administer.
The next, ex parte /Skinner, 9 J. B. Moore, 278, in the court of Common Pleas, was a strong case indeed. In this also, the habeas corpus was granted on the petitioú of a mother who sought to rescue an infant child from the custody of it's depraved father, who had not only deserted the mother, hut who was then living in open adultery with another woman. The authority of Lord Mansfield in PisselVs case, Lofft’s Rep. 748, was strongly pressed upon the court, but was in effect overruled, and the judges, referring to the language and adopting the doctrine of Lord Eldon in De Mandeville v. De Mandeville, denied the application, declaring that the Chancellor was álone competent, by a proper change of the custody, to grant the necessary relief. The most recent case in England is ex parte Sandilands, which is reported in the last volume of that very useful and well selected compilation of law and equity casee, which is now in course of publication at Boston (12 Law and Equi. Rep. p. 463, S, C. 21, Law Jour. Rep. p. 326); and it affords a striking proof that the large discretion once claimed by the Court of King’s Bench, if not wholly abandoned, is now reduced within its narrowest hounds. The motion for a habeas corpus was made on behalf of a husband, and its object was to compel a reluctant wife, who had deserted him without cause, to return to his protection and her own duties.
The case of Rex v. Meade (1 Burr, 542) was confidently relied on in support of the motion; for although in that case the habeas corpus was denied, it was so upon the sole ground that the husband had given bis voluntary consent to the existing separation, and the language of the judges necessarily implied that this consent was the only bar to the success of his application. That this was the fair construction of that case was not denied by the court; but as it appeared from the affidavits, in *719 the case before them, that the wife was not in fact under any restraint, the judges all concurred in the opinion that the motion could not be granted, Lord Campbell, Ch. <L, forcibly saying “ that it would be useless to compel the appearance of the wife, since, if she were brought up, the judges could only ask her where she would go, and could not compel her to return to her husband.” It must, however, be admitted that Lord Campbell, in the course of his opinion, distinctly stated that “ the case of infants of tender years stands upon different grounds;” and this is, in fact, the solitary exception to which I alluded in the commencement of my remarks; the exception from the general rule that a habeas corpus, in a court of common law, can never be used for the sole purpose of enforcing marital or parental rights. The supposed exception, however, applies only to infants of such tender years, as to be incapable of making a choice; and in the case of The King v. Greenhill (4 Adol. and Ell. 642), the grounds of the exception, and the cases to which it applies, are so lucidly stated by that distinguished judge, Hr. Justice Coleridge, that I cannot do better than quote his language. These are his words: “ A habeas corpus proceeds on the fact of an illegal restraint. When the writ is obeyed, and the party brought up is capable of using a discretion, the rule is simple and disposes of many cases, namely, that the individual who has been under restraint is declared to be at liberty, and the court will even direct that the party shall be attended home by an officer, to make the order effectual. But when the person is too young to have a choice, we must refer to legal principles to see who is entitled to the custody,' because the law presumes that where the legal custody is, no restraint exists.” In Rex v. Greenhill, the children, whose custody it was held belonged to the father, were not in court, and an order for their delivery to the father was therefore affirmed; but Coleridge, J., expressly says, that had they been in court, there would only have been a verbal declaration that the custody belonged to the father. It is evident, therefore, from these facts, and the remarks of the learned judge, that the alleged exception is more apparent than real. An infant of such tender years as to be incapable of rationally expressing its wishes, which is all that I can understand to be meant by “ incapable of making a choice,” is of *720 necessity under restraint, and in order to determine whether the restraint is illegal, the court must determine to whom the custody belongs. When the infant is before the court, nothing more is necessary to be said, since the person entitled to the custody may then, without opposition, by taldng possession of the child, assert his legal right; but when the infant under an illegal restraint is not in court, an order for his delivery must, necessarily be made; for, in such a case, it is in reality nothing more than an order for his discharge. Since the case of Rex v. Greenhill, which, in awarding the custody of children of a very tender age to a profligate father in preference to their mother, was one of flagrant injustice, an act of Parliament, an act which we have adopted (2 R. S. p. 149), has been passed, giving to the courts of common law a discretionary pbwer of awarding the custody to the mother; but in all other cases, I apprehend that the law is settled, that the only question to be determined upon a habeas corpus, where a restraint is proved, is its legality, or illegality; and when it is held to be illegal, the only judgment to be pronounced, the discharge of the person restrained; and that no case is to be found, in which, there being in fact no restraint, any order whatever has been made.
I proceed next to inquire into the past condition and actual state of our own law.
During our whole existence as a colony, and until the year 1787, the English Habeas Corpus Act was in force, if notprojorio vigore, yet as a part of our common law. In that year all English statutes were repealed, and this, as well as many others, was enacted by our Legislature, and in its new legislative form was nearly a literal transcript of the original act. Like that, it was confined to persons committed upon a criminal charge, and, like that, gave no other authority to a judge acting under its provisions, than to discharge, bail, or remand the prisoner brought before him. It was re-enacted substantially in the same form in the revisions of 1801 and 1813, and remained unchanged until 1818, when it was materially enlarged and improved; but, as the changes then made were incorporated in 1830 in the statute, as then revised and amended, and. no case is to be found in the interval affecting their construction, it is not necessary now to advert to them.
*721 It follows from this statement, that none of the reported cases in this state between 1787 and 1830, in which a question as to the custody of infants has arisen, have any bearing upon the present discussion, since in all, as in the English cases that have been rejected as inapplicable, the habeas corpus was the common law, not the statutory writ. The cases that have most frequently been quoted and relied on, as proving the existence of the discretionary power that I am now required to exercise, are The People v. Landt (2 John. R. 374); McDowle's case (8 John. R. 328); Ferguson!s case (9 John. R. 239); and Waldron’s case (13 John. R. 419). It is not to be denied that the Supreme Court, in some of these cases, adopting the views, and nearly the language, of Lord Mansfield, in Rex v. Delaval, and of Ch. Tilghman in The Commonwealth v. Aldrichs (5 Binney, 520), asserted its power to make a positive order for the delivery of an infant into the custody of the person whom, according to the particular circumstances in evidence, it might deem to be entitled; but it is remarkable that, in each of the cases, the exercise of this discretion was, in fact, declined; and declined (I add) for reasons so applicable to the present case, that, were it possible for me to pass the limits of the jurisdiction which the statute gives, they would probably control my action.
Thus, in the matter of Waldron (13 John. R. 419), the court refused to take an infant daughter from its grandparents and deliver her to the custody of her father, it not appearing that she was kept against her will, and because, in "the opinion of the judges, the court of Chancery, from its peculiar jurisdiction, was better able to protect and enforce the rights of the parties, and determine properly the question of custody, than a court of law, upon a habeas corpus. In McDowlds case, the language of the court, as to the impropriety of interfering against the will of an infant, is still more explicit. It amounts, indeed, to a denial of the right. A father claimed the restoration to his own custody of two sons under age, who- were living as apprentices with the person to whom the writ was directed, and the ground of the application was, that- their indentures were void, and their detention by their master therefore illegal. Thompson, Ch., in delivering the judgment of the court, said, “ All that the court is required to do under this writ, is to see *722 that the infant is not restrained against his will,” and after referring to the cases, and particularly Rex v. Smith, in 2d Strange, he added, “ In this case the court can oyly declare that these infants are at liberty to go where they please. They may go and put themselves under the care and protection of their father, or may return to the service of their master.” The boys elected to remain with their master, and the court sent.an officer with them to protect them on their return.
It has been strongly urged that the father has a paramount legal right to the custody of his infant children, and that' the court, when it has no reason to believe that his power will be abused, is bound to make a positive order for their delivery into his possession and control; but the cases last cited, without adverting to any other, conclusively show that, even at common law, such is not the obligation of the court, whatever may be its powers.
The only cases, since the adoption of the Eevised Statutes, that can be supposed to have any application, are The People v. Chegaray (18 Wend. 542), and The People v. Mercein (3 Hill, 399).
The People v. Chegaray is not founded upon the general Habeas Corpus Act, under which I am acting, but upon special provisions in the title of parents and children, in a prior chapter of the Revised Statutes (2 R. S., chap. 8, part 2, pp. 148-149); and these provisions, it is an obvious remark, were certainly useless, had the Supreme Court been deemed to possess, either at common law, or under the general statute, the same discretion, in awarding the custody of infants, as undoubtedly belonged to the Court of Chancery. Under these provisions, a wife living in a state of separation from her husband is authorized to apply to the Supreme Court for a habeas corpus to bring before it a minor child of the marriage, and the court, upon the return of the writ, is empowered to award to her the charge and custody of the child, under such regulations and instructions as the case may require. In construing these provisions in The People v. Chegaray, Bronson, J., truly observed, that “ they had conferred a power upon the Supreme Court which it did not before possess; and that it was not the object of the common writ of habeas corpus to try the rights of *723 parents or guardians to the custody of infants, but merely to deliver them from unjust imprisonment, and all illegal or improper restraint.”
If the sole object of the ordinary writ is the deliverance of the party from an illegal restraint, it is a necessary consequence that the court, when it terminates the restraint, exhausts its power.
In the People v. Mercein, the Supreme Court (Nelson, Ch. J., dissenting), commanded the defendant by a positive order to deliver an infant under his control into the custody of the father; and so far as I have been able to discover, with the exception of Eiekerson’s case (19 Wend. 16), it is the only case to he found in our own reports in which a similar order has been made.
Passing over the objection that this decision is not easy to he reconciled with that of the court of errors, in Mercein v. The People (28 Wend., p. 64-106), it is subject to several observations which render it inapplicable as an authority that I am hound to follow.
First, Mr, Justice Cowen distinctly says, that the father, in prosecuting the writ, was in the exercise of a common law right, and that this right had not been taken away by the statute (3 Hill, p. 407); and Bronson, J., who concurred with him, had previously said that the statute did not apply to the case, and that the judge who issued the habeas corpus had exercised a common law, not a statute, authority (25 Wend., p. 82).
Second, The defendant, on behalf of the mother, insisted that he was entitled to retain the possession of the child, and hence it became necessary to decide to whom the custody belonged, in order to decide the question of an illegal restraint.
And lastly, the child was of such tender years as, in the judgment of the court, to be incapable of making its election; and, as I infer from the report, was not in the presence of the court when the decision was made. Had it been, an order for its delivery would have been unnecessary. The same observations, I apprehend, apply to Hickerson’s case; the proceeding was at common law, for the writ appears to have been granted and returned at a general term; as opposite claim to the *724 custody was set up, and the question of right was therefore necessary to be determined, and the child was not before the court when the order was made; to which I add, that, as the . contest in that case was between the father and mother, a husband and wife living in a state of separation, the case, although not within the words, was plainly within the equity of the title of parents and children (2 R. S., pp. 126-7, §§ 1, 2); for if, under that statute, an infant may be taken from the father and given to the mother, a fortiori may the custody be transferred from the mother to the father, who at law has a paramount right.
I do not deem it necessary to examine the decisions upon a habeas corpus in other States of the Union, as, for several reasons, they have a very remote, if any, application; and from the review that I have now made of the English cases and our own, I feel warranted to draw the following conclusions.
First. There is no adjudged case in which it has been'held that an officer, acting out of court, either under the original habeas corpus act, or the present enlarged and amended statute, when a person who has been illegally restrained is brought before him by a-habeas corpus, has any authority to do more than simply to discharge him.
Second. There is no adjudged case in which it has been held that such an officer may supply the defect of his authority, under the statute, by assuming a discretionary power, which if it reside elsewhere than in a court of equity, belongs only to a court of common law in the exercise as a court of a common law authority.
Third. Comparing all the cases, and following the most recent, the law may now be regarded as settled, that the basis of the common law, as well as of the statutory habeas corpus, is an illegal restraint, and consequently that this fact must be admitted or proved to exist, to warrant any further proceeding on the writ.
Fowrih. Even where a restraint is proved and is held to be illegal, the authority of the court, even when acting under the common law writ, is limited to the discharge of the person restrained, except in the case of an infant of such tender years as to be incapable of making a choice.
*725 Fifth. This exception, however, is more apparent than real, since in this case, the questions of right of custody and of illegal restraint are so inseparably connected that, 'in pronouncing a judgment, both must be determined, and it is only when the infant is not before the court, but is still in the possession of the person whose restraint is held to be illegal, that a positive order for' its delivery is made. Such an order, under these circumstances, is in truth, nothing more than an order of discharge, since, when the infant is so young as to be wholly incapable of acting for itself, it can only be discharged from the restraint of one person by giving it into the custody of another.
Lastly. The authority which the higher courts at Westminster and the Supreme Court of this state now possess, of taking the custody of an infant from the father, to whom it legally belongs, and transferring it to the mother, creates no exception from the general rule, since, both in England and in this state, this authority is given by a special statute, which it is admitted was necessary to be passed, to justify its exercise. A special statute would have been useless, had the common law judges possessed the same discretion as the Chancellor.
The result of this investigation is, that, whatever may be my personal wishes, it is impossible for me to make any order relative to the future disposition and custody of the child, unless it can be shown that I derive the necessary authority from a just construction of the general statute upon which my proceedings are founded. (2 Rev. Stat., Ft. 3, Chap. 6, Tit. 1, Art. 2, p. 563.) Ho attempt, however, has been made to show that the statute gives the desired authority, either expressly or by implication; and had the attempt been made, a careful examination of the statute authorizes me to say, it must have been fruitless. There is not a section, sentence, or line, that could be fairly adduced to sustain the assertion. The Habeas Corpus Act, in its revised form, is greatly enlarged in its operation, and, it may be thought, somewhat improved in its language and details, but it is unchanged in its principle, and in the nature and extent of the relief that may ultimately be given; and to prove this, a special and critical examination of its various provisions is by no means required. There are a few sections only to which it can be necessary to refer. By the first section (p. 563, sec. 21), the *726 right of prosecuting a habeas corpus is no longer confined to persons imprisoned for a criminal offence, but is extended to all, who, within this state, are “ committed, detained, or restrained of their liberty, tinder any pretence whatsoever,” with a few exceptions, not necessary to be stated, which are specified in the next section. It is therefore Certain that an illegal restraint is now, as it has always been, the basis of the writ. It is this fact, therefore, that must be positively and distinctly stated and sworn to, in the petition upon which the application for the writ is founded (p. 654, sec. 25). If the fact is not so alleged, the officer to whom the application is tirade, would exceed his jurisdiction by allowing the writ, and it is equally plain that he would exceed his jurisdiction by refusing to dismiss it, when the allegation is shown to be groundless. As the formal assertion of the fact alone gives him jurisdiction, so the actual truth of the assertion can alúne preserve it. If the writ, where there is no restraint, ought not to issue, it follows that, where there is no restraint, as erroneously issued, it must be quashed.
Where the jurisdiction of the officer issuing, the writ is continued, and the restraint of the party brought before him, by virtue of the process, upon a due inquiry into its cause, is found to he illegal, the words of the statute, in prescribing the course to he followed, are free from a shadow of obscurity or doubt: they are most plain and' unambiguous: they give no discretionary power, but impose a positive duty. The language is, that the officer “ shall discharge the party from the custody or restraint in which he is held.” (2 Rev. Stat. § 39, p. 567.) It is this order which the officer is bound to make, and I apprehend he can make no other. If he has any authority to make a further or different order, I am yet to learn from what source it is derived, and upon what grounds its exercise can be defended. It is not given to him by the statute: he has it not at common law: he has it not as clothed with the powers of a Chancellor. It may he that such an authority has not unfreqnently been exercised; but if so, it has been exercised without inquiry and without right.
It remains only to apply the observations that, have been made to the facts of this case, and this will, not long detain me.
*727 Mrs. Cooper, to whom the writ is directed, and by whom it has been obeyed, denies, in her return, that the child Jane Trainer is detained by her, or in any manner restrained of her liberty. She admits that the child is free; she claims no right to her services, but asserts that she remains "with her of her own free will, and solely from motives of affection. There is no evidence to show that this retain is untrue; on the contrary, its truth has been proved by the examination of the child herself, who in the strongest terms, and in a manner that left no doubt of her sincerity, declared her attachment to Mrs. Cooper, and her desire to remain in her service and under her protection. Under these circumstances, I am constrained to say that Jane Trainer is not “imprisoned, detained, confined, or restrained of her liberty in any manner or upon any pretence whatsoever, and that the contrary allegation in the petition upon which the writ was allowed is shown to be groundless. I must therefore declare that I have no longer any jurisdiction," and that, as the habeas corpus, had the truth been known, ought not to have issued, it must now be dismissed.
Had a different return been made to the writ, had the respondent claimed the child as her slave, or set up, under a pretended contract, a right to her services, the result would have been substantially the same, since I could only have discharged the child from a restraint that I should have held to be illegal. In no event, under my present construction of my powers and duty, could I have made the order that is required. Did I indeed possess the ample discretion which belongs to the Supreme Court, as now the Court of Chancery of the state, I should probably have no difficulty in making a suitable arrangement for the future custody of the child. For manifest reasons, she would not be left with the respondent, nor, for reasons nearly as cogent, which his examination has disclosed, would I place her in the custody of her father. Yet I doubt not, that, even with the consent of the child, a disposition of her custody might be made, by which her future happiness and welfare would be effectually consulted.*
*728 As the case stands, I can do no more, following the example of the Supreme Court in McDowle’s case, than say to the child: “You are free. If you please, you may go to your father, to whom your obedience is due, and put yourself under his care, or, if you so choose, you may return with the person with whom you are now living, and with whom, as you declare,# you wish to continue.”
[Chief Justice .Oaklet and Judges Campbell and Boswobth, with whom only Judge Duer had the opportunity of consulting, concurred in the opinion that his whole authority was derived from the statute, and that, under the statute, he could make no order for the delivery of the child.].

 It was the intention of the judge, and he so stated when announcing hia decision, had it been in hia power, to place the child in the custody of the Edv. *728 Mr. Pennington, a highly respectable colored minister of the gospel, who most generously offered to take her into his own family, educate her as one of his own children, and give ample security for the faithful performance of the trust.