THE PEOPLE ex rel. JOSEPH BOICE vs. MELISSA BOICE.

The act of the legislature, of March 20, 1860, constituting every married woman the joint guardian of her children, with her husband, did not limit the guardianship of the wife to the period of coverture, but in case of the death of the husband, the power survived to the wife, and the husband could not deprive her of the right by appointing a testamentary guardian.

The legislature, by the act of April 10, 1862, amending the act of March 20, 1860, and repealing the above provision thereof, did not intend to restore the power given to the father, by the revised statutes, of appointing a testamentary guardian, or to infringe materially upon the mother's right to the custody of her children, in case she survived her husband.

THIS is a common law certiorari awarded by the supreme court, upon the application of Joseph Boice, for the purpose of reviewing the decision of Henry Brodhead, jun. county judge of Ulster county, transferring to Melissa Boice the custody of her infant child. On the 22d day of January, 1862, the above named Melissa Boice presented a petition to the said county judge, alleging that her infant child, Charles Boice, who was between the ages of *two and three years*, was illegally restrained of his liberty by the relator, Joseph Boice. The petition alleged that the petitioner, whose maiden name was Margaret Fiero, was married during the year 1853, to one John H. Boice; that the said John H. and the said Melissa cohabited as man and wife, and on the 27th day of May, 1859, Charles Boice, (the child whose custody was sought to be obtained,) was born; that the said Charles was the legitimate son of the said Melissa and the said John H. Boice; that John H. Boice departed this life on the 10th day of November, 1861, leaving him surviving his widow, the petitioner, and his said son Charles; that the said Charles was illegally restrained of his liberty by Joseph Boice, who claimed the right to his custody, under and by virtue of the last will and testament of the said John H. Boice, deceased, who by such will had appointed him (Joseph) the guardian of such child. The judge allowed the writ. The return of Joseph Boice to the writ, admitted that the child was the

legitimate son of Melissa Boice, the petitioner, and the said John H. Boice, deceased. It further alleged that the petitioner, Melissa, on or about the 17th day of February, 1860, had, without sufficient cause, left the house of the said John H. Boice, deceased, leaving the child in the care of his father; that on or about the 1st day of March, 1860, the petitioner, Melissa, commenced an action in the supreme court against the said John H. Boice, deceased, for a separation from bed and board, and for the custody of the child; that in the month of May, 1860, a motion was made by the said petitioner for alimony during the pendency of the suit, and for the custody of the child, which motion, so far as the custody of the child was concerned, was denied; that during the pendency of the suit John H. Boice died, having left a will, by which will, duly proved before the surrogate of Ulster county, the relator, Joseph Boice, had been appointed the testamentary guardian of such child. The return then alleged that the petitioner, Melissa, was of feeble health, and unable to support the child, who was better cared and provided for by the relator than he could or would be by the petitioner, his mother; that he believed the application was made by the mother for the custody of the child to obtain the $150 of personal property, which had been set apart by the appraisers; that the child was alienated in his affections from his mother, the petitioner, and was much attached to the relator, and those employed by him to take care of the child.

Upon the return day of the writ, the petitioner demurred to the return of the relator, alleging as cause therefor that the return showed no legal cause for the detention of the infant. The judge held the return to be sufficient, and overruled the demurrer. The matter was then adjourned to the 4th day of February, 1862, when the parties again appeared with their counsel, and testimony was given on both sides. On the part of the relator it tended in some degree to show that the temper and disposition of the mother were some-

The People *v.* Boice.

what bad and rough, and that she did not treat the child with much affection; that she left and abandoned her husband, and that the child was well cared for by the relator and was improving in health and appearance. The testimony on the part of the mother tended to show that her temper was not bad; that her habits were industrious and her treatment of the child affectionate and kind; that she was living with her father who was willing and competent to take care of her and the child; that the relator was a single man, of little property, who was obliged to rely more or less upon a female attendant to take care of the child.

The county judge, after hearing the case, decided that the infant was illegally restrained by the relator, and directed the latter forthwith to discharge the infant from his custody and to deliver him to his mother, Melissa Boice. The relator thereupon sued out a certiorari to review the proceedings and reverse the order of the county judge.

*Peter Cantine,* for the relator.

*T. R. Westbrook,* for the defendant.

*By the Court,* HOGEBOOM, J. At the time these proceedings were had before the county judge of Ulster county, the law of 1860 (*chap.* 90) was in force; the 9th section of which declares that " every married woman is hereby constituted and declared to be the joint guardian of her children with her husband, with equal powers, rights and duties in regard to them with her husband." This was a valid act of general legislation, not interfering with vested rights, and materially curtailed the right of the father and enlarged that of the mother in regard to the guardianship and custody of infants. It placed the father and the mother upon strict legal equality, and it does not in terms, nor in my opinion in legal effect, limit the guardianship of the wife to the period of coverture. The law must be liberally construed to effectuate

its obvious intent, which was to enlarge the sphere of maternal authority. I am of opinion, therefore, that the power would survive to the wife in case she survived her husband. If so, it would seem to be inconsistent (in case of the survivorship of the wife) with those provisions of the revised statutes, (2 *R. S.* 150,) which confer upon the father the power of appointing a testamentary guardian, and, as a later expression of the legislative will, must be deemed *pro tanto* to repeal those provisions. Hence the power attempted to be exercised in this instance by the father was ineffectual, and the testamentary guardian had no right, as against the surviving wife, to the custody or guardianship of the infant. The mother was entitled to its custody and control, and to the aid of the writ of habeas corpus to free it from the illegal restraint of the pretended testamentary guardian, which illegal restraint in the case of an infant of such tender years as to be incapable of a voluntary selection of its protector, is not effectually removed until it is restored to the custody of its lawful guardian and surviving parent. (*Mercein* v. *People,* 25 *Wend.* 73. *People* v. *Chegaray,* 18 *id.* 637. *People* v. ———, 19 *id.* 16. *People* v. *Porer,* 1 *Duer,* 709, 724. *People* v. *Cooper,* 8 *How. Pr. Rep.* 288, 296.)

The order of the county judge was therefore proper at the time it was made.

But by the law of 1862, (*chap.* 172, § 2,) the 9th section of the act of 1860, before quoted, is repealed, and it might become necessary to determine the effect of this repeal upon the order aforesaid, and the question whether it did not revive the provisions of the revised statutes, were it not for the 6th section of the act of 1862, which is as follows: "No man shall bind his child to apprenticeship or service, or part with the control of such child, or *create any testamentary guardian therefor,* unless the mother, if living, shall in writing signify her assent thereto." The terms of this act are too clear to admit of the supposition that the legislature designed to restore the power of appointing a testamentary

guardian to the father, or to infringe materially upon the mother's right to the custody of her child of such tender years.

On the merits of the case as to the question whether the mother or the uncle of the infant is the more suitable person to be entrusted with such a charge, if that question is a proper one for discussion on this application, I am of opinion that the testimony is by no means decisive, nor of such a character as to require us to deprive the mother of the custody of her child on any such ground.

I am of opinion that the proceedings before the county judge should be affirmed.

Judgment accordingly.

[ALBANY GENERAL TERM, September 1, 1862. *Hogeboom, Peckham* and *Miller*, Justices.]