## THE PEOPLE *v.* EDWARD H. RULLOFF.

The question of a prisoner's guilt or innocence of a crime for which he is indicted, can in no case be decided on an application for a discharge on *habeas corpus.*

The presumption of innocence to which a prisoner is entitled on a trial before a jury, is not applicable to proceedings on *habeas corpus.*

To subject a prisoner to a second trial, where a former conviction on the indictment has been reversed, and a new trial ordered, by a court of review, on the application of the prisoner, is not a violation of the constitutional provision which declares that "no person shall be subject to be twice put in jeopardy for the same offense."

The provisions of the Revised Statutes, under which a prisoner is declared to be entitled to his discharge if not brought to trial before the end of the next term of the court, unless satisfactory cause be shown by the district attorney (3 *R. S., 5th ed.,* 1029, 1030), are not a "statute of limitations;" a failure to comply with them would be a mere irregularity, and would not entitle a prisoner to be discharged on a writ of *habeas corpus.*

Nor is it a sufficient cause for discharge on *habeas corpus* that the prisoner was not present in court when the trial of the indictment was postponed till the next term of the court, though it was the right of the prisoner to be present.

THE prisoner was brought up on a writ of *habeas corpus,* and the grounds on which he claimed to be discharged are sufficiently stated in the opinion of the court.

*E. H. Rulloff,* in person.

*D. Wright,* for sheriff.

KNOX, J. The question to be decided arises upon a writ of *habeas corpus,* issued to the sheriff of the county of Cayuga, to inquire into the cause of the detention by him of Edward H. Rulloff, the relator, the return of the sheriff to such writ, the allegations and proofs of the prisoner, and the allegations and proofs offered by the district attorney of the county of Tompkins. From these the following facts appear:

That on the 18th day of December, 1845, the prisoner was indicted at a Court of Oyer and Terminer, of the county of Tompkins, for the murder of Harriet Rulloff, in the county of Tompkins, on the 24th day of November, 1845. That in the month of September, 1847, the prisoner was arraigned on these indictments, and pleaded that in the month of February, 1846, he had been convicted of a Court of Oyer and Terminer, held in the county of Tompkins (HIRAM GRAY, justice), of having abducted her or taken the said Harriet Rulloff out of the country, and against her will, which conviction still remains in full force and virtue. That upon the trial for abduction the jury were charged among other things, in substance: "That if they should find that at the time of her disappearance, the said Harriet had in fact been murdered in the county, then they should acquit the prisoner of abduction, and that to convict of abduction, they should find that at the time of her disappearance, she had in fact been taken out of the county alive, and against her will."

That in June, 1856, at a Court of Sessions in Tompkins, the prisoner was indicted for the murder of his infant daughter, upon which, at the Tioga Circuit, held in October, 1856, the said indictment having been removed into the Supreme Court for trial, the said Rulloff was found guilty. That a writ of error with stay of proceedings, having been afterward allowed, the Court of Appeals reversed the judgment, and ordered a new trial, and remitted the case for further proceedings. That in July, 1859, the prisoner sued out a writ of

*habeas corpus*, and on being taken before the general term of the Supreme Court, at Cooperstown, the case was set down .for trial at the October term, of the Tioga Circuit, 1859. That at the Tioga Circuit an order was entered by direction of the presiding justice, on motion of the district attorney, without any appearance of said Rulloff, but in his absence and without his consent or knowledge, continuing the said indictment to the next term of the Circuit Court, to be held in the county of Tioga. That since the filing of the *remittitur*, the district attorney has allowed the May general term, of the .Supreme. Court, in and for the 6th district, several circuits and special terms of said court, and the spring term of the Tioga Circuit to pass, keeping the prisoner in custody upon this charge, without moving for a new trial or bringing the prisoner into court, or making any other motion in the case, except the motion made as aforesaid, to continue said indict-· ment in the Tioga Circuit, in October, 1859.

That an indictment was found against the prisoner, at the Court of Sessions of Tompkins county, in July, 1859, for breaking jail on the 5th day of May, 1857. That a warrant was issued on said indictment, and delivered to Edward P. Hoskins in July, 1859, on which the prisoner was arrested in July, 1859, and having been confined in the jail of Tompkins county, was transferred to the jail of the county of Cayuga, by an order of the county judge of the county of Tompkins, on the ground that the jail of the county of Tompkins was unsafe for his confinement.

On these facts, the prisoner asks to be discharged, and rests his demand on these grounds:

1st. As to the murder of Harriet Rulloff. The conviction for abduction, and the indictment for the murder of Harriet Rulloff, being both for the same substantial matter, though charged as different offenses, the conviction for abduction, while unreversed, is an absolute bar to the prosecution for murder.

2d. The failure to bring the prisoner to trial within the time prescribed by the statute, entitles the prisoner to be discharged. That by the statute he acquires this right, which no subsequent

proceedings can divest him of, and that, so far as relates to the offense charged, he is ever after entitled to a discharge.

3d. That as to the murder of his infant daughter, the prisoner has been once tried, within the intent and meaning of the Constitution, and is therefore entitled to his discharge.

4th. That the order made in his absence, at the Tioga Circuit, was and is void, as without jurisdiction, and so he is entitled to his discharge, for the reasons stated in the second point.

5th. That as to the charge of breaking jail, the neglect of the district attorney to bring him to trial at either of the subsequent terms of the Tompkins Sessions, or show cause for delay, entitles him to a discharge.

The importance of this case to the prisoner, and the great interest manifested by the public in regard to it, rather than any difficulty in arriving at what I deem a proper conclusion, have led me fully to state the causes of the detention of Rulloff, and his allegations and my reasons at length, for a decision which otherwise would have been made at the close of the hearing.

It would, perhaps, be a sufficient answer to the application for his discharge, to say, that, admitting all he claims, to wit: that under these proceedings we have a right to try the question of a prisoner's guilt or innocence, though charged on indictment, and that he is innocent of the charges alleged against him and should be discharged, after the district attorney has suffered two sessions of the court in which the indictments are triable, to pass without bringing him to trial, or showing cause for continuing the indictments, there is no evidence before me, that since his arrest and confinement on the indictment for breaking jail, any terms of the Court of Sessions in the county of Tompkins, at which he could have been tried, have been held. There is no evidence, therefore, on which to found the allegation that he has a right to be discharged, which has become absolute and which cannot be divested. But I shall put my refusal to discharge him on no such narrow ground.

All the objections made by the prisoner rest upon funda-

mental errors. He mistakes and misstates the office of a writ of "*habeas corpus*." He assumes that the officer granting it has a right to try the question whether a prisoner indicted is "guilty or not guilty" of the crime of which he is charged. This is not the case. The history of the writ, the nature of it, and the practice under it, both as a common law remedy and as extended and modified by statute in England and in this country, show that it never was contemplated that such a trial was to be had. The only way in which this question can be tried, is by the intervention of a jury before a proper court; and in a capital case it has been but recently held by the Court of Appeals, that the person charged cannot be tried, even by his own consent, except by a jury of twelve men. (*Cancemi, plaintiff in error*, v. *The People, defendants in error*, 18 *N. Y.*, 129.) The writ issues to inquire into the grounds upon which any person is restrained of his liberty, and when it is found that his restraint is illegal, he is to be delivered. It certainly cannot be said that a person's restraint is illegal when he is held upon two indictments for felonies of the first class, and upon one indictment for a misdemeanor, on each of which, in a proceeding of this nature, he is supposed to be guilty of the offenses with which he is charged, though on a trial by a jury his entire innocence will be presumed. In the case of *McLeod* (1 *Hill*, 377), Justice Cowen held, and such was the opinion of the late Nicholas Hill (see note in third vol. of *Hill*, 658), that the fiftieth section of the *habeas corpus* act is satisfied by limiting the inquiry to the lawfulness of the authority under which the prisoner is detained without being extended to the force of the evidence upon which the authority was exerted, on which it may be in the prisoner's power to adduce at the trial. Though able judges since have dissented from this proposition, and held that the Supreme Court, in the exercise of its appellate jurisdiction in criminal matters, or any member of it, when the commitment was by an examining magistrate before trial, may not only review the ground of commitment upon which the magistrate has acted, but hear new proof, and bail or remand the prisoner, as the

justice of the case may require; no one has decided that a party duly committed on a regular indictment, can be discharged on *habeas corpus* by proving his innocence, however clear the proof may be. The question was asked on the hearing: "Suppose a person is indicted for the murder of A. B., and committed, and subsequently A. B. is produced alive, may not that person, on *habeas corpus*, on producing A. B. alive before the officer, be acquitted and discharged of the offense as on a trial?" I answer, *no.* A trial in court and an acquittal by a jury, or the entering of a *nolle prosequi* by the district attorney, by order of the court in which the indictment is pending, are the only methods by which the prisoner can be fully discharged.

It is not necessary to say whether in the case supposed the officer might not properly let to bail. If, in a given case, it appeared by the indictment, that no offense was charged, that is to say, if the act charged as having been committed by the prisoner constituted no offense, as if, for instance, the prisoner was held on an indictment which charged "that he had absented himself from the State, and he was guilty of a misdemeanor," there would be nothing to try, and the prisoner might be discharged. But when there is an offense charged a jury must come. If the officer issuing the writ, can try the question which the prisoner asks him to try, and decide it in his favor and acquit, why may not the officer decide it against him and punish. If he can say he is not guilty, why may he not say he is guilty. This inevitably follows from the right to try, and then how would the officer execute his judgment? It would be a novel proceeding were an officer authorized to try and acquit, but not to convict. Such an officer would soon, I apprehend, monopolize all the criminal business of the country, especially when the persons tried were really guilty.

I have said enough, and perhaps too much, on this point.

Now, as for the point that he cannot be twice tried for the same offense. I say, the conviction for the murder of his infant daughter having been reversed and a new trial ordered,

matters stand as if there never had been any trial on the indictment. In fact, in the eye of the law, he has not yet been tried. Errors were committed on the trial which made it necessary to set aside the conviction, and it is a little strange, if the objection is tenable, that the counsel of the prisoner did not suggest to the Court of Appeals the propriety of discharging the prisoner, in case they found that the conviction should be set aside, on the ground that the "*corpus delicti*" had not been proved.

As to the right to be discharged because of the delay in bringing the prisoner to trial, let us see what the statute says: "If any prisoner indicted for any offense, triable in a Court of Sessions, and committed to prison, whose trial shall not have been postponed at his instance, shall not be brought to trial before the end of the next term of the Court of Sessions which shall be held in the county in which he is imprisoned after such indictment found, he shall be entitled to be discharged so far as relates to the offense for which he is committed."

"If any prisoner, indicted for any offense not triable in a Court of Sessions, but which may be tried in a Court of Oyer and Terminer and committed to prison, whose trial shall not have been postponed at his instance, shall not be brought to trial before the end of the next Court of Oyer and Terminer which shall be held in the county in which he is imprisoned, after such indictment found, he shall be entitled to be discharged, so far as relates to the offense for which he was committed."

"If satisfactory cause shall be shown by the district attorney, to any court to which application should be made, under either of the two last sections, for detaining such prisoner in custody or upon bail, until the sitting of the next court in which he may be tried, the court shall remand such prisoner, or shall hold him to bail, as the case may require." (3 *R. S.*, 5th ed., pp. 1029, 1030, §§ 30, 31, 32.)

These sections are not a "statute of limitations." They are intended to regulate the practice of the courts, and a failure to

comply with them would be a mere irregularity. But, as a matter of fact in this case, after the prisoner had, by writ of *habeas corpus*, been brought before the Supreme Court in the sixth district, a new trial in the case of the indictment for the murder of his infant daughter was ordered, while the prisoner was present, to be had at the next Tioga Circuit. At this circuit, the indictment was continued till the next circuit to be held in Tioga. When this order was made, the prisoner was not present. Although he ought, properly, to have been present, and had a right to be, the order continuing the indictment without his presence, was a mere irregularity, and it is well established that a mere irregularity cannot be reached by *habeas corpus*.

The prisoner asks, " How then am I ever to be discharged, if the district attorney will not move my trial ; and the courts will not discharge me as the statute provides, or on a writ of *habeas corpus ?*" To this it may be said, that it is not to be supposed that courts, judges, or other officers, will not do their duty, but the contrary. The statute provides that, previously to every court, the district attorney shall issue his precept, commanding the sheriff to bring all his prisoners before the court, with all papers and process relating to each, which precept the sheriff must obey (2 *R. S.*, 309, *sec.* 23, 4*th ed.*) ; and then, unless satisfactory cause be shown for detaining him, he may be discharged.

I hold, therefore, that the prisoner must be remanded, and be discharged after trial and acquittal, or by the entering of a *nolle prosequi* by the district attorney, or by order of the court under the sections of the statute already quoted.