(Franklin County Common Pleas Court.)

EX PARTE HIRAM P. McKNIGHT.

1. On habeas corpus, the fact that the indictment on which the relator was tried, convicted and sentenced charged no crime against the relator cannot be inqiured into and decided.

2. A judgment of the Supreme Court, on habeas corpus, releasing the relator from confinement in virtue of a trial, conviction and sentence, because the relator had not been extradited to be tried for the offense charged in the indictment, is not a bar to a second arrest, trial, conviction and sentence.

3. The relator, having been at liberty for twelve days between his relese by said judgment and his second arrest, etc., he had a reasonable opportunity to return to the State whence he dad been extradited; but not having availed himself of that opportunity, his arrest in this state and second trial, etc., were lawful, and not barred by the Supreme Court's said judgment.

4. The release of the relator, on habaes corpus, by the probate court of Henry county on the ground that he had been detained in jail for more than two terms, after his arrest and commitment to jail, did not bar his second prosecution, (a) because that court had no jurisdiction to render such a judgment; (b) because, on the issue joined before a jury as to whether the relator was, in fact, released from such judgment, the verdict was against the relator, and he acquiesced in the judgment based on that verdict.

Section 7309 of the Revised Statutes is not a "statute of limitations," and its violation is only an irregularity.

6. The judgment of the Supreme Court and of the probate court of Henry county were not contracts with the relator in the sense of the provision of section 10 of article 1 of the United States constitution which forbids the passage of state laws impairing the obligation of contracts.

---

In Habeas Corpus.

PUGH J.

The relator, Hiram P. McKnight, who is a prisoner in the Ohio penitentiary, seeks, in this proceeding of habeas corpus, to be restored to his liberty.

In December, 1890, at least two indictments were preferred against him by the grand jury of Wood county, one for forgery and uttering a forged instrument with knowledge of its forged character, and the

other for obtaining property under false pretences.

He was then in the state of New York. He was extradited for the purpose of being tried for the crime of forgery.

In March, 1891, he was tried, convicted and sentenced to the penitentiary, the decision being that the lower court had no power to try him for the crime of obtaining property under false pretences, because he had only been extradited to be tried for the crime of forgery. Ex parte McKnight, 48 Ohio St., 588.

A State cannot procure a fugitive from justice from another state, and then try him for another and different offense, before he has had a reasonable opportunity to return to the asylum whence he was brought by force. It would be a palpable abuse of judicial process. I would be a fraud upon justice. It would be such an act of perfidy that courts should not hesitate to condemn it. That was the principle of the Supreme Court's decision.

Since it appeared to the Supreme Court, however, that the indictment for forgery, was then pending, McKnight was remanded to the custody of the sheriff of Wood county "for further proceedings according to law on the indictment * * * for forgery"

It is not important, but it is a part of the history of this case, that, on a petition in error, the judgment of the common pleas court of Wood county, in that case, and also that of the circuit court affirming it, were reversed by the Supreme Court.

In December, 1891, while in the custody of the sheriff, McKnight instituted an habeas corpus proceeding in the probate court of Henry county. After a hearing, that court discharged him from the custody of the sheriff. This occurred on December 18th, 1891. The legal meaning and effect of that discharge will be discussed in the context of this meeting.

For twelve days, following December 18th, 1891, McKnight was at liberty, during which time he was with his mother in Toledo, O. December 30th, 1891, he was again arrested.

In March, 1892, he was tried, convicted and sentenced to the penitentiary for seven years, for the crime of forgery and uttering a forged instrument.

There was no evidence to show when the indictment on which he was thus tried, convicted and sentenced, was preferred.

The Assistant Attorney General stated in his brief that it was found by the grand jury in January, 1892, but he offered no evidence to prove it. However, it is not one of the relevant master facts of the case.

In March, 1892, McKnight was again tried, convicted and sentenced to the penitentiary for the term of two years, for committing the crime of obtaining property under false pretenses, the term to begin at the expiration of the term of seven years before mentioned.

The Assistant Attorney General asserted that the indictment on which McKnight

was then tried, convicted and sentenced was found in January, 1892.

One of McKight's own witnesses, R. S. Parker, testified that his impression was that a second indictment, for obtaining property under false pretenses, was found by the grand jury, and that he was tried, convicted and sentenced, the last time, on that indictment. But I think the more satisfactory evidence in the case discloses that only one indictment of that kind was found, and that he was tried, convicted and sentenced, both times, on that indictment. It is not important, however, whether there was only one, or whether there were two, of these indictments.

1. The first contention of the relator is that the indictment charged no crime, and, therefore, he should be discharged.

I have not formed any opinion as to whether this criticism is sound, or not. It raises a question which cannot be decided in habeas corpus proceedings. The proceedings of the common pleas court of Wood county cannot be reviewed for the purpose of discovering and correcting errors and irregularities. The writ of habeas corpus cannot perform the functions of a petition in error. That court having had jurisdiction to try any one on an indictment accusing him of the crime of obtaining property under false pretenses, this court cannot inquire whether it erred in its decisions.

Our Supreme Court has already decided this question. It has decided that the sufficiency of an indictment cannot be challenged by habeas corpus. Ex parte Bushnell, 9 Ohio St., 77, 184.

One of the circuit courts has already resolved that the fact that an indictment charges no crime known to the law is not triable on habeas corpus. Hatch v. St. Clair, 2 C. C., 163.

The only pertinent inquiry in such a case as this, is. whether the court, which pronounced the sentence, has jurisdiction.

2. As a second reason for his discharge, the relator assets that, on the second trial, he tendered a plea that the decision of the Supreme Court, in the habeas corpus proceeding brought before it, was final, conclusive and a bar to the second prosecution, but that the trial court refused to entertain the plea, and denied his right to file it; and, further, that, by the second trial. he was twice placed in jeopardy, and was deprived of his liberty without due process of law.

(a) The judgment of the Supreme Court did not foreclose the State's right and power to prosecute and try him, the second time, for committing the offense of obtaining property under false pretenses. That was not its legal significance and effect. The Supreme Court merely decided that the lower court was not empowered to try the relator, at the time it did, on the indictment, because he had not been extradited to be tried for the offense therein charged. Before he could be put on trial for that offense, he was entitled to a reasonable opportunity to

return to New York state. If that opportunity had been previously afforded to him, the lower court would have been endued dowed with the power to try him. The court did not even intimate that he might not be tried again on the same indictment. There were three contingencies in which he might have been the second time tried on the same indictment.

1. He might have waived his privilege.
2. He might have returned to New York and have been re-extradited.
3. He might have been set at liberty and a reasonable opportunity afforded him to return to his previous asylum, but failed to avail himself of the opportunity to return.

This view is evidently the one which was implied in the decision of the Supreme Court; for, in the opinion, Judge Williams said: "His right is not to have the indictment set aside, but only to exemption from trial upon it. * * * * The maintenance of this privelege does not involve an attack on the indictment." How could the judgment be conclusive, and bar a second prosecution, if it did not "set aside" the indictment?

The indictment not having been dismissed or "set aside," that implied the right to conduct further proceedings under it, including another trial, if certain conditions of fact should arise. The relator was set at liberty. He was a free man for twelve days. That time gave him a reasonable opportunity to return to the asylum from which he had been coerced. The evidence did not disclose that he was unable to realize that opportunity. His own testimony showed that he was sick and under a doctor's charge; but it failed to prove that he was so indisposed that he was not physically able to leave the state. The state having proved by his own testimony, that he had a reasonable opportunity to return to his place of refuge, it was not required to make any further showing; and it was incumbent upon him to prove that he was not in a condition to avail himself of that opportunity. But that he failed to do, as his own testimony demonstrates. Twelve days afforded him more than reasonable opportunity to return to New York state.

In one case, where the relator was brought, by the extradition process from Vermont to New York, it was decided that one day was a reasonable opportunity, considering the facilities for taveling. In re Fitton, 45 Fed. Rep., 471.

The relator. McKnight, not having used the opportunity afforded to return to his asylum, the state was just as much empowered to cause his arrest, to have him prosecuted, tried, convicted and sentenced, the second time, on the indictment for obtaining property under false pretenses, as it would have been if he had never been a fugitive from justice, and had never been extradited.

A statute of the state virtually excludes the element of finality and conclusiveness from the judgment of release on habeas

corpus. It was in strict conformity to section 5747 of the Revised Statutes that the relator was again" imprisoned for the same offense," by either, "the legal order or process" of the "court having jurisdiction of the * * * * offense." That is just what the statute authorized, and it evidently embraces just such a condition of fact as existed when the relator was again arrested, tried, convicted and sentenced. This statute merely crystallized the common law rule; that is all. That rule is illustrated by this case: In Ex Parte Milburn, 9 Peters, 704, Judge Story observed: "The points principally relied on at the argument are, in the first place, that the party is not liable to be arrested to answer the indictment * * * *; in the next place, that the discharge upon the habeas corpus before Mr. Justice Cranch, is a bar to any subsequent arrest. We are of opinion, that neither of these grounds can, in point of law, be maintained.

A discharge of a party under a writ of habeas corpus from the process under which he is imprisoned, discharges him from any further confinement under the process; but not under any other process which may be issued against him under the same indictment." See, also, State v. Fley, 4 Am. Dec., 583; Bonner case, 151 U. S., 282; and Hurd on Habeas Corpus, 564, cited by Mr. Lott.

(b) The claim that, by the second trial, conviction, &c., he was put in jeopardy a second time for the same offense is not defensible.

The trial court having had no power to try him the first time, no jeopardy attached, although that prosecution was carried just as far as it could be.

The judgment of the court on that trial was void, not voidable; and, therefore, the relator was not, by it, exposed to any danger. 1 Bishop's Crim. Law, Sec. 1028.

In re Kazer, 5 Ohio, 545, the decision was that, since a jurisdictional defect prevented a legal sentence on a verdict of guilty, the finding of another indictment and another trial, for the same offense, was lawful. The prisoner had been tried, convicted and sentenced to the penitentiary, and was in that institution, when the judgment was reversed. This case is sometimes cited as "In re Turner, 5 Ohio, 522."

Here, in the case against the relator, the court was not then vested with power to try him for an offene different from that for which he was extradited to be tried. That made the first trial and sentence void. For that reason, he was never exposed to legal jeopardy.

3. Another, and the third, contention of the relator is, that he was released and discharged from imprisonment, under the indictment in case 1083, by the decision of the probate court of Henry county, and that therefore by his present imprisonment he is deprived of his liberty and imprisonment three times for the same offense in violation of his constitutional rights guaranteed by

the state and United States constitutions.

The relator was ordered to be released by the probate court because he had been detained in jail without a trial for more than two terms after his arrest and commitment to jail.

The constitution guaranteed him a "speedy public trial;" and the statute (Sec. 7309) provided that he should not be detained in jail, without a trial, for a continuous period embracing more than two terms after his arrest and commitment, and that he should be discharged unless a continuance be had on his motion, or the delay be caused by his act.

It is doubtful whether the judgment of the probate court could have effected his discharge from imprisonment under the indictment upon which he was tried, convicted and sentenced the second time, even if the court was authorized to so adjudge his discharge. This was certainly true, if the indictment was not found, as the Assistant Attorney General insisted, till January, 1892.

The record which contains a recital of the plea of the relator based upon the probate court's judgment was the only evidence offered by the relator.

The plea recited and alleged that he was, by the judgment, released from imprisonment, under, and pursuant to, that identical indictment. The fact should have been proved by the introduction of the record of the habeas corpus case in the probate court. That was the only competent mode of proving the fact, if it was a fact.

But in disposing of this point, I shall not apply and enforce the strict rule of evidence against the relator. There are two answers to his contention based on that judgment.

(a) The reply of the state to his plea was, that he was not, by that judgment under the indictment in the case in which he was tried, convicted and sentenced for obtaining property, under false pretenses. That made an issue of fact, and it was tried to, and decided by, the jury and adversely to the relator.

If he was aggrieved by the verdict of the jury, and the judgment founded upon it, he should have taken the case to the appellate courts on error. It is not competent for this court to review them.

The relator made some criticism on the verdict of the jury which was barren of merit. The verdict did respond to the issue. The language of the verdict is: We, the jury in this case, impannelled to try the issues in this action, made by the plea in bar filed by defendant, Hiram P. McKnight, to the indictment and the reply of the state thereto, do find in favor of the state."

That was a full, complete and legal response to the issue tried. It was not necessary to do anything more. But this superfluous language was added: "and that said Hiram P. McKnight has not been acquitted of the crime charged in the indictment."

Because the word "discharged," the statutory word, was not employed, the insistence of the relator was, hat the verdict was not in favor of the state. The criticism, I repeat, is without any merit.

The additional finding was more supererogation; the term "acquitted" is the synomyn of the term "discharged." It did not vitiate that part of the verdict which preceded it.

(b) But another answer to this contention is, that the probate court was without jurisdiction and power to render such a judgment, giving the broadest interpretation to it, in favor of the relator.

A justice of the peace possessed just as much power to render such a judgment.

The common pleas court had jurisdiction of the case. It was incumbent upon the relator to make application to that court for his discharge, under section 7302, of the Revised Statutes. He had no right to juggle himself out of jail by obtaining a judgment of discharge from a court which had to usurp authority in order to render it. Ex Parte McGehan, 22 O. S., 445.

I am not unmindful that probate courts have equal authority with the common pleas courts to issue writs of habeas corpus. But that has no relevancy to the solution of this question. The fact that the relator was detained more than two terms, without trial, did not render his imprisonment, his detention, after that time, illegal. It was a mere irregularity. The statutory provision (sec. 7309) is not a "statute of limitations." Disobedience to its requirement was a mere irregularity. The relator's detention in violation of its terms was. therefore, not a sufficient ground for his discharge on habeas corpus, by the probate court. People v. Ruolof. 5 Park. Cr., 77. Church on Habeas Corpus, sec. 25.

The design of the statute was to "prevent wrongful restraint of liberty growing out of the malice and procrastination of the prosecutor, but not to shield a prisoner in any case from the consequences of any delay made necessary by the law itself." Clark v. Commonwealth, 29 Pa. St., 129.

The consideration of this design of the statute reinforces the conclusion that the relator's detention beyond the period of two terms, without a trial, was a mere irregularity, and not an absolute nullity and an illegality, and hence it was not a sufficient basis for his discharge on habeas corpus. His detention was not a void; it was only voidable.

There is a limit to the judicial inquiry in habeas corpus proceedings. as I have already suggested one which is well known and settled. Non-jurisdictional errors will not be considered in such a proceeding. If it is in obedience to a judgment that the relator is imprisoned, it must be void, not voidable. or his detention must be, for some other reason, absolutely illegal, to warrant his discharge. There is no such element in the case now nuder her discussion.

If the probate court, instructed by the rule of comity existing between courts of co-ordinate jurisdiction, had formed a proper conception of, and had cherished a proper sentiment of respect for, the common Pleas Court which had jurisdiction to try the question which it attempted to decide, the relator would never have been discharged.

4. Another point which was pressed by the relator in his argument, although it did not come wthin the range of the specific allegations of his petition, was, that the judgments of the Supreme Court and of the probate court of Henry county were, in the contemplation of law, contracts with him, and that the obligation of those contracts was impaired by the judgment of the common pleas court of Wood county which sentenced him to the penitentiary for two years, and thereby the familiar provision of the United States constitution, which forbids the passage of state laws impairing the obligation of contracts, was profaned and trampled upon.

The obligation of contracts may be impaired by judicial construction, as well as by a statute. But the term contract is used in that constitutional provision "in its ordinary sense, as signifying the agreement of one or more minds, for considerations proceeding from one to the other, tc do, or not to do, certain acts.' Mutual assent to its terms is the pith and marrow of such contracts. (109 U. S. Rep. 288.)

It only embraces contracts which relate to property, or to some object of pecuniary value, and such as confer rights which may be asserted in a court of justice, the word "and" being used in a conjunctive, and not a disjunctive, sense.

A judgment is, in one sense a contract, but it does not belong to the category of contracts embraced by that constitutional provision. There is no element of assert in such a contract. It is an involuntary contract as to the party upon whom its obligation rests. It would be a waste of time to cite authority to sustain this interpretation of the constitutional provision upon which the relator relies.

The relator's petition is dismissed, and he is remanded to the custody of the Warden of the penitentiary. An exception in his favor is reserved. I will sign a bill of exceptions, if it is wanted, just as soon as it is prepared, so that this decision may be, speedily, reviewed by the appellate courts. (Affirmed by Circuit Court Sept. 28, 1896.)