(87 Misc. Rep. 595)

### PEOPLE ex rel. BULLOCK v. WARDEN OF CITY PRISON.

(Supreme Court, Special Term, Kings County.   November 23, 1914.)

1. HABEAS CORPUS (§ 3*)—NATURE OF WRIT—RIGHT TO.

Where relator was indicted for manslaughter, and the jury disagreed, the Supreme Court will not, where the prosecution for manslaughter was dismissed and relator reindicted for murder in the first degree, liberate him on habeas corpus, even though his first trial constituted former jeopardy, and a conviction for murder in the first degree could not be upheld, for it must be presumed that the County Court, which has jurisdiction of the proceedings, will grant relator proper relief.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 3;  Dec. Dig. § 3.*]

2. CRIMINAL LAW (§ 185*)—FORMER JEOPARDY—WHAT CONSTITUTES.

Relator's first trial constituted jeopardy, within the federal and state Constitutions, prohibiting the putting of a person in jeopardy twice for the same offense;  for the state, having proceeded to trial and required defendant to make his defense against a charge of one degree of homicide, cannot thereafter dismiss that prosecution and indict for a higher degree, even though, under Code Cr. Proc. § 400, authorizing the trial judge to dismiss the charge and order a resubmission of the case to the grand jury, where the testimony shows a higher offense than that charged, it might have secured a dismissal and reindictment before accused had made his defense.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 344;  Dec. Dig. § 185.*]

Habeas corpus by the People of the State of New York, on relation of Charles Bullock, against the Warden of the City Prison.   Writ denied, and relator remanded.

Robert H. Elder, of New York City, for relator.

James C. Cropsey, Dist. Atty., and Harry G. Anderson, Asst. Dist. Atty., both of Brooklyn, for respondent.

KELLY, J.   The relator is before the court on a writ of habeas corpus, to ascertain the cause of his imprisonment.   The warden makes return that he holds the relator under a commitment of the county judge of Kings county, made at a term of the County Court, on October 16, 1914.   It appears that on October 15, 1914, the grand jury of the county of Kings returned an indictment against the relator, charging him with the crime of murder in the first degree.   The relator upon arraignment refused to plead to the indictment thus returned, and thereupon a plea of not guilty was entered for him by order of the County Court.   He was then committed to await trial.   The relator traverses the return, alleging that his imprisonment under said indictment is illegal, for the reason that he cannot be tried for murder in the first degree, or upon the indictment so returned, because such trial would be in violation of his constitutional rights, referring especially to article 1, § 6, of the state Constitution, which provides that "no person shall be subject to be twice put in jeopardy for the same offense."

The "offense" charged against the relator in the indictment is homicide.   The grand jury charges him with murder in the first degree, in that on April 13, 1914, in the county of Kings, he willfully, feloniously,

and of malice aforethought shot and killed Gertrude Bullock; said death occurring on April 15, 1914. It appears that on April 23, 1914, he was indicted by the grand jury in Kings county for the same homicide, but charged in the earlier indictment as manslaughter in the first degree. He pleaded not guilty to that indictment, and was thereafter brought to trial upon that indictment in the County Court. A jury was impaneled and sworn. The prosecution presented its evidence and rested. The defendant relator presented his defense. Counsel for the relator and the district attorney summed up the case. The county judge charged the jury, which retired for deliberation. The jury subsequently reported to the court that they were unable to agree, and were discharged; the defendant being held for a second trial. Instead of retrying the defendant upon the charge of manslaughter in the first degree, the district attorney, without any order or direction of the County Court, presented the same homicide to the October grand jury, which indicted the relator for murder. On November 7, 1914, the original indictment for manslaughter was dismissed by order of the County Court.

[1] The situation presented is unusual, and the legal questions involved are important and interesting. I have reached the conclusion that the relator is not entitled to his discharge upon habeas corpus by a justice of the Supreme Court, although I think his objection to trial on the second indictment is sound in law. But that objection must be presented to the County Court, to which the indictment was returned, and in which it is pending. There is no question of the jurisdiction of that court over the subject-matter and the person of the defendant. It seems to me that the orderly procedure requires the defendant to apply to the County Court to quash the indictment now pending against him, and for his discharge from imprisonment. The decision of a justice of the Supreme Court discharging the relator upon habeas corpus is not made in the criminal action against him pending in the County Court. That prosecution might go on, and we would have the anomaly of an indictment brought on for trial, for murder in the first degree, with the defendant at large. In People ex rel. Burke v. McLaughlin, 77 Misc. Rep. 13, 136 N. Y. Supp. 122, where the relator applied for his discharge upon habeas corpus, asserting that his indictment was unlawful, because found without sufficient evidence, Mr. Justice Stapleton said:

"A prisoner may not be discharged from custody by a tribunal without power to vacate the order of commitment or to dispose of the indictment upon which it was issued. With an apparently valid indictment for murder found against him, an accused may not be at large pending trial in a court having jurisdiction of his person and of the subject-matter of the action"—citing People ex rel. Sherwin v. Mead, 28 Hun, 227; People v. Rulloff, 5 Parker's Cr. R. 77; Church on Habeas Corpus (2d Ed.) § 244.

Judge Stapleton's order, in the case cited, was unanimously affirmed by the Appellate Division in this department (152 App. Div. 912, 137 N. Y. Supp. 1136), and by the Court of Appeals (207 N. Y. 769, 101 N. E. 1116).

The relator relies upon People ex rel. Stabile v. Warden, 202 N. Y. 138, 95 N. E. 729, where the court held, on the facts there presented, that habeas corpus was the proper procedure to relieve the defendant

in that case from unlawful imprisonment and a second jeopardy. But the difference between the Stabile Case and the case at bar is this, in my opinion: In that case the prosecuting officer was proceeding to retry the defendant upon the same indictment, whereas, because of the improper discharge of the jury on the first trial, the defendant was in effect acquitted. The Court of Appeals holds that he was at once entitled to his liberty, when the trial judge prematurely discharged the jury upon the first trial: That the court had no power or right to remand the defendant for retrial. That is not the case at bar. When the jury disagreed in the case of the relator here, the court followed the legal and orderly course of remanding him for a second trial. By new and novel proceedings he has been again indicted; but it is a valid indictment upon its face, and I think his remedy is in the court where the indictment was found, and where, at this writing, at any rate, it is to be tried. We must assume that the relator's rights will be fully protected. "The writ of habeas corpus cannot be used as a writ of error to correct mistakes or other irregularities of other tribunals." People ex el. Bungart v. Wells, 57 App. Div. 140, 68 N. Y. Supp. 59; People ex rel. Hubert v. Kaiser, 206 N. Y. 46, 99 N. E. 195.

[2] While I thus hold that I am obliged to dismiss the writ and remand the relator to custody, I think the parties to this proceeding are entitled to my views upon the main question presented on this application. I have said that the situation is unusual. I do not find any similar case in the books. Both the federal and state Constitutions prohibit putting a man twice in jeopardy for the same offense. In this case there is no dispute about the "offense"—the killing of Gertrude Bullock on April 13, 1914. This killing was homicide. For this offense, or alleged offense, because homicide is sometimes justifiable and sometimes excusable, the defendant was charged by the people of the state of New York with the crime of manslaughter in the first degree. I am not called upon to discuss the wisdom or the constitutionality of the various provisions of the Code of Criminal Procedure, by virtue of which, prior to trial, new or superseding indictments may be found for the same offense. This procedure is well established, and in the interest of the public welfare may be absolutely necessary; and a judge at trial may dismiss a jury and order the resubmission of the case to a grand jury, if the testimony shows a higher offense than that charged. Code Crim. Proc. § 400.

The counsel for the relator says that this provision of the Code is unconstitutional, and certainly, if it is claimed that, after the defendant has been put to his defense, any such action can be taken, it would appear to be unconstitutional. But prior to the trial, and even though the trial be commenced, if before the defendant is called upon to offer evidence in support of his case—before the case for the prosecution is closed—the facts appear to warrant such application by the district attorney, or action by the court, such procedure might be sustained. The practice is rarely followed, but cases may be presented where it is necessary and proper to prevent miscarriage of justice. And if some unavoidable happening ends the trial, sickness of a judge, a juryman, the defendant, or the disagreement of the jury, it is right and proper that the defendant should be retried, even though such unexpected and

unavoidable happening occurred after the defendant had commenced the presentation of his case. The jeopardy created by an offense involves the trial of the accused party, and his acquittal or conviction. The completed trial ends the jeopardy; but it has not ended, if some untoward circumstance prevents the completion of the trial. These propositions seem to be elementary.

But in no statute that I have ever read, in no case reported in the books, or ever heard of, as far as I know, is it suggested that the state, with all its powerful criminal machinery, can charge a citizen with a given crime, with the right to find superseding indictments, or even after trial commenced to procure from the trial judge an order terminating the trial, and resubmitting the matter to a new grand jury for indictment for a higher degree of crime or perhaps for a new crime, and with all these means at its disposal, elect to put him on trial for manslaughter, and then having presented its case, having deliberately tendered this issue to him, having forced him in his own defense to introduce evidence to meet the charge, having listened to his plea to the jury and the law laid down by the court governing the charge, that in such case, a jury having failed to agree, the district attorney, instead of retrying the defendant, may present the same offense—the same homicide —to a new grand jury and procure an indictment of the defendant for murder. What is jeopardy for the offense, if this man has not been put in jeopardy? A defendant may be misled, his evidence and his defense to the charge made against him disclosed and presented, with no result except to involve him in a new trial on a new accusation for a new crime. Such procedure might easily lead to most unjust results. I think the framers of the Constitution intended to prevent it, and that in this case, while the people had the right to retry the defendant on the indictment for manslaughter, they had no right to indict him for murder in the first degree, and have no right to try him on that indictment.

The writ is dismissed, and the defendant remanded to the custody of the warden.