Smith, J.
Upon the 24th day of March, inst, I granted two writs, one of habeas corpus, the other of certiorari, to inquire into the cause of the detention of the relator by the defendant. The writs were returnable before me at Watkins upon the twenty-sixth day of March. Upon the said day the parties appeared, and were heard through counsel in reference thereto. In determining this case it is important to consider several questions :
First. To what right is the relator entitled under the writ of certiorari over and above his rights under the writ of habeas corpus ? Is the writ of certiorari more searching r Does it bring before the court for review any further papers or evidence or give the court any further right of determination than does the writ of habeas corpus ?
There has been in the books considerable confusion upon this question, but a careful study of the scheme of the Code renders plain, I think, the intention of the lawmakers.
By § 1991 of the Code of Civil Procedure, state writs are enumerated. Among them is the writ of habeas corpus to bring up a person to testify or answer ; the writ of habeas corpus, and the writ of certiorari, to inquire into the cause of detention; the writ of mandamus ; the writ of prohibition, and the writ of certiora,ri to review the determination of an inferior tribunal, which may be called a writ of review. It will thus be seen that the writ of certiorari to inquire into the cause of detention and the writ of certiorari to review the determination of an inferior tribunal are two separate and distinct writs. The latter writ, which I will call ' the writ of review, can be issued only by the court in general or *463 special term; is directed to the inferior tribunal; the return is made to the clerk and the argument upon the return must be heard at general term. It is, as its name indicates, a writ of review, under which the determination arrived at may be reviewed by the general term, and the evidence before the tribunal may be examined to see if it authorizes the conclusions reached. The determination of Justice Forbes that a contempt has been committed might thus be brought before the general term for review, and the justice would be required to certify to the general term all of the facts upon which his determination was based. People ex rel. Choate v. Barrett, 56 Hun, 351; 30 St. Rep 728. The writ of certiorari to inquire into the cause of detention, however, is not in its nature essentially a writ of review. The writ is directed to the sheriff or person having the prisoner in custody. He is required to return to the judge issuing the writ by what right he holds the custody of the person detained. Under this requirement he returns simply the commitment. See Code, §§ 2005, 2022, 2026» He has not possession of the evidence upon which that commitment was granted. He cannot certify any such evidence, nor is he required so to do. Under § 2041 of the Code, if the offense is not bailable, upon an application for a writ of habeas corpus the court or judge may grant á writ of certiorari. Under the writ of habeas-corpus^ the body of the person must be produced. If the offense is bailable, the court may then accept bail. If the offense is not bailable, there is no necessity of the presence of the detained person upon the argument, and a writ of certiorari may be issued, which calls for precisely the same return from the custodian, but does not bring the body of the detained person. Under that writ, then, the same questions arise, the same facts appear for determination, and the same limitation rests upon the power of the court as upon the writ of habeas corpus. The relator has gained nothing by having two writs, one of habeas corpus, the other of certiorari. The questions here for determination are only those which might arise under either writ upon the return of the sheriff showing the mandate of the court under which he holds the relator.
Second. What rights has the relator upon his examination before the grand jury ? In Wharton on the Law of Evidence, § 533 it is said : “ A witness, such is one of the most cherished sanctions of the law, will not be compelled to answer any question the answer to which'would be a link in the chain of evidence bv which he could be convicted of a criminal offense.” The grand jury had under investigation the cause of a supposed crime, which resulted in the death of a woman in the city of Ithaca, caused by the generation of a deadly gas in jugs which had been provided for that purpose. It seems that this gas was generated and conducted to a room in which was being held a lawful meeting of the freshman class of the university, for the purpose of disturbing the said meeting. Such act would seem to constitute, under § 448 of the Penal Code, a misdemeanor.. Under § 189 of the Penal Code the killing of a human being while engaged in such an act would seem to constitute the crime of manslaughter in the first degree. These sections are referred to, not for the purpose of pointing out what *464 crime was under investigation, but for the purpose of showing that some crime was charged. Under the circumstances surrounding the case the probabilties are that the crime was committed by some of the students of the university. This relator, then, a student of the university, was called upon and asked the following questions : “(1) Do you know where those jugs were purchased ? (2) Do you know who purchased those jugs that were in the room in the Masonic building the night of the freshman banquet on the night of February 20, 1894 ? (3) Do you know to whom those jugs were delivered after they were purchased ? (4) Do you know when those jugs were purchased ? ” These questions the relator refused to answer. Had he the right so to refuse ? In Wharton’s Law of Evidence, § 538, it is said : “A witness will be compelled to answer as to conditions which he shares with many others (e. g., whether he was in the neighborhood of a homicide on a particular day when such neighborhood includes a city), though not as to conditions which would bring the crime in a suspicious nearness to himself.” The questions call for personal knowledge. IE he answers of'his personal knowledge where the jugs were purchased, he must have been present at the place of their purchase. If he answers who purchased them, he must have been present and seen them purchased. If he answers to whom those jugs were delivered after they were purchased, he must have been in the company of parties who were directly connected with the crime. If he answers when those jugs were purchased, he must have been present at the time of their purchase. It is apparent, therefore, that any answer he might give to these questions would reveal such conditions as would bring the crime “in suspicious nearness to himself.” This fact would clearly tend to criminate him. If he answers that he himself purchased the jugs the inevitable tendency of the evidence would be either to charge himself with the commission of the crime, or of so aiding and abetting in its commission as to make himself a principal therein.
The district attorney, upon the argument, admitted that if these questions alone were asked the relator would have the right to assert his privilege, but he would take from the witness his privilege because of the answer to three other questions, as follows : “ Do you know what the contents of those jugs or either of them were .at the time of the purchase, or what was placed in them immediately after the purchase ? A. I do not. Q. Do you know the nature of the act which was intended to be perpetrated upon (he freshman class upon the night of their banquet ? A. No, sir, I do not. Q. Did you know for what object or purpose the jugs were purchased, either at the time of the purchase or prior to the freshman banquet on February 20,1894? A. No,sir; I do not.” It is claimed that he has by this evidence, shown that he himself was guiltless of the crime, and that, therefore, his claim of privilege is made, not to shield himself but to shield his friends. In other words, the syllogism reduced is : (1) The man who swears that he himself is innocent of a crime is not entitled to the benefit of this protection. (2) The relator Taylor has sworn to facts showing his innocence. (3) The conclusion follows that he is not *465 entitled to this protection. The syllogism thus reduced is clearly erroneous in both its major and minor premise. IE the major premise is "true, then the protection which the law affords was designed for guilty parties and not for innocent parties. This construction I cannot accept. A man may be wholly innocent of crime and may assert his innocence, and still be entitled to the protection against revealing any fact which might tend to charge him with crime. Notwithstanding his assertion of innocence if he answers questions asked revealing the fact that lié purchased those jugs, a jury might well, with other circumstances, fasten the crime upon him. It is for the protection of innocent parties that this privilege is given by the law. The law knows no guilty parties before conviction. At every stage of the proceedings the law gives him the right to refuse to divulge any fact within his knowledge which might be used to charge him with crime.
But the minor premise is clearly at fault. Suppose Taylor himself had purchased those jugs for the purpose of causing some disturbance of this lawful meeting, he might well then be guilty as a principal in this crime without either knowing the contents of the jugs or the nature of the act that was intended to be perpetrated, or the exact object and purpose of the purchase. He has not, therefore, asserted, his innocence of this crime, nor any facts which would of necessity relieve him if he had been connected in any way with the purchase of those jugs. I conclude, therefore, that if he believed that the answers to the questions recited in the commitment would tend to criminate him, he had the right, as matter of law, upon testifying to such belief, to refuse to answer the said questions.
Third. Does the commitment, then, charge any criminal contempt? By this commitment I am bound as to facts recited therein. In People v. Hackley, 24 N. Y. 78, Judge Denio says: “ The question whether the alleged offender really committed the act charged will be conclusively determined by the order or judgment of the court.” The learned judge was then speaking of such review as was permitted upon a writ of habeas corpus. The commitment recites the questions asked of the relator, and then further recites: “And the said Frederick L. Taylor then and there, instead of answering the said interrogatories so put to him as aforesaid, stated and answered each of said interrogatories as follows, to wit, ‘I throw myself upon my privilege.’ And the court having then and there decided that each of said interrogatories was a legal and proper one, and that the reasons given by said Frederick L. Taylor for not answering the same are invalid and insufficient * * doth hereby adjudge the said Frederick L. Taylor guilty of a criminal contempt oh court.”
It is not enough for the witness to throw himself upon his privilege. The law gives him great license in allowing him to refuse to answer where he asserts, under oath, that the answer would tend to criminate him. If the court can see that any answer which ' he should give can reasonably produce such an effect it is bound to accept his oath without explanation as to how it can tend to *466 criminate him. It is a necessary safeguard, therefore, against the abuse of this privilege that the,witness should make oath that in his opinion the effect of his answer would have a tendency to criminate him. He knows, and he alone, whether such would probably be the effect of his answer. In Youngs v. Youngs, 5 Redf. 518, Judge Rollins says : “ The foregoing cases abundantly establish that, by the English authorities, the bare oath of a witness that an answer may tend to criminate him is not deemed of itself conclusive, but that the judge is called upon -to exercide his discretion in determining, whenever the pifivilegs is asserted, whether an occasion has arisen for its rightful exercise. The witness in every case must pledge his oath as to his own view of the matter.” But authority seems hardly necessary for the proposition. The privilege which the law gives to these witnesses often materially obstructs the course of justice, and, as in the case at bar, baffles the attempts of the public prosecutors to ferret out the real criminals. The witness should not, therefore, b"e accorded this right of silence unless he make record, under oath, of his own opinion that the effect of his answer would tend to criminate him. Upon the commitment which the sheriff lias returned as his authority for the detention of the relator it does not appear that any such evidence has been given by the relator. The questions asked of the relator were legal and proper questions until the relator should claim his privilege and swear that their answers would tend' to criminate him. It, therefore, appears that the relator is detained for a criminal contempt specially and plainly charged in the commitment made by a court having authority to commit for contempt so charged, and under § 2032 of the Code must be rejnanded. It is claimed by the relator, however, that the minutes' of the evidence before the grand jury show that he did swear that such answers would tend to criminate him. But those minutes are not before me for my consideration. Nor, as far as appears, were they before the judge who committed for the contempt. The contempt for which he is now in prison is for not answering the questions put to him, or rather for making as his only answer, “ I throw myself on my privilege." IE he shall appear before the grand jury at its next meeting and there make answers to the questions which have been asked him, or make oath that the answer to such questions will tend to criminate him, he may then claim his privilege and will have purged himself of the contempt for which he now stands committed. Tjie prisoner is, therefore, remanded to the sheriff of Tompkins county under the commitment upon which he is now detained.
Ordered accordingly.