(57 App. Div. 140.)

### PEOPLE ex rel. BUNGART v. WELLS, Sheriff.

(Supreme Court, Appellate Division, Second Department. January 11, 1901.)

1. HABEAS CORPUS—SUFFICIENT TRAVERSE OF RETURN.

　　A traverse, on information and belief, of the sheriff's return to a writ of habeas corpus, that he had custody by virtue of the commitment of a justice named, denied that it appeared from the evidence taken before the justice in the preliminary examination that the crime of arson alleged against the prisoner had been committed, and that there was sufficient cause to believe the prisoner guilty thereof, and that there was no sufficient evidence before the justice on the examination that the crime had been committed, or sufficient cause to believe the prisoner guilty thereof, and thus, in the language of Code Cr. Proc. § 207, providing when and how an accused is to be discharged, negatived the existence of the facts necessary to the magistrate's jurisdiction. *Held*, that the traverse was sufficient.

2. SAME — PRISONER COMMITTED ON PRELIMINARY EXAMINATION — FACTS ALLEGED IN RETURN—CONCLUSIVENESS.

　　Code Civ. Proc. § 2031, requires an examination into the facts alleged in the return to a writ of habeas corpus, and into the cause of the imprisonment or restraint, and a final order of discharge if no lawful cause for imprisonment be shown, "whether the same was upon a commitment or supposed criminal matter," etc. Section 2039 authorizes the prisoner, on the return, to deny any material allegation thereof, or make any allegation of fact showing the imprisonment unlawful, or that he is entitled to his discharge, and that thereupon the court must proceed summarily to hear the evidence pro and con, and to dispose of the prisoner as justice requires. *Held*, that in examining the proof of the facts alleged in a return, showing the commitment of the prisoner by a justice on a preliminary examination, the court is not precluded from going behind the return, and the commitment is not conclusive as to the legality of his confinement.

Appeal from special term, Kings county.

Habeas corpus by the people, on the relation of Peter J. Bungart, against J. Sheridan Wells, as sheriff of Suffolk county. From an order of the special term dismissing the writ, and from an order overruling a demurrer to the sheriff's return and sustaining the demurrer to the traverse and answer to the return, relator appeals. Reversed, and prisoner discharged.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, and JENKS, JJ.

James Troy, for appellant.
Livingston Smith, for respondent.

JENKS, J.  This case presents a question of right upon a writ of habeas corpus, which is well termed the greatest writ of the common law, because it assures and secures personal liberty by simple and direct process available to every citizen. Its place is above debate and dissension. Hume, who wrote hatred of Whiggism into history, wrote: "This law seems necessary for the protection of liberty in a mixed monarchy. As it has not place in any other form of government, this consideration alone may induce us to prefer our present constitution to all others." Junius, the friend of Wilkes, wrote of it to Lord Mansfield as "so fully considered as another Magna Charta of the kingdom." The Tory, Dr. Johnson, who wrote against Junius, said: "The duration of parliament, whether for seven years or for the life of the king, appears to me so immaterial that I would not give half a crown to turn the scale one way or the other. The habeas corpus is the single advantage which our government has over all other countries." And, quoting him, the Whig, Macaulay, who also accused Hume of being a partisan historian, said: "It is, indeed, not wonderful that the great law should be prized by all Englishmen, for it is a law which, not by circumlocution, but by direct operation, adds to the security and happiness of every inhabitant of the realm." And a later historian—Goldwin Smith—writes that among the five checks reckoned against absolutism the habeas corpus has a place with the control by parliament over legislation, its legislative authority, the liability of royal officers to suit and impeachment, and the trial by jury. The United Kingdom, vol. 1, p. 296. The value of the writ of habeas corpus, says Kent (lecture 24, p. *32), is that "personal liberty is not left to rest for its security upon general and abstract declarations of right." The courts are jealous to assert that this right cannot be emasculated or curtailed by legislation. They should be zealous to declare its inviolability from any attacks in their own fora that menace its sweep and its power. There is a principle underlying this case beyond its instance that warrants a plain pronouncement of the law.

This is an appeal from an order of the special term dismissing a writ of habeas corpus issued to the sheriff of Suffolk county to inquire into the cause of the imprisonment of Wright, and from the order and decision of said court overruling the demurrer of the relator to the return of said sheriff to the writ, and from the decision and order of said court, then made, sustaining the demurrer of the

said sheriff to the traverse and answer of said relator to said return. The petitioner showed that the cause or pretense of the imprisonment was a commitment directed to the said sheriff, and signed by Hawkins, a justice of the peace of Suffolk county, reciting that an order was by him made that Wright be held to answer at the next court at which a grand jury would be in attendance upon a charge of arson in the third degree, and commanding the sheriff to hold him in custody. A copy of the commitment was annexed, and the petitioner averred, on information and belief, that said commitment and imprisonment were unlawful, in that the said justice had no jurisdiction to hold said Wright to answer as aforesaid, or otherwise, or to make or issue said commitment, and that the same was illegal. The writ commanded the sheriff to have the body in court, with the time and cause of such imprisonment and detention; the district attorney was notified thereof, and that he would require at the hearing the preliminary examination of the said Wright before Hawkins, justice. The sheriff returned that he had custody by virtue of a commitment of Hawkins, justice, and by virtue of a certified copy undertaking [sic] bail annexed. The relator demurred that the return was insufficient, and that the authority and true cause of the imprisonment of Wright were not set forth as required by subdivision 2, § 2026, Code Civ. Proc. The demurrer was overruled. Thereupon the relator traversed by denying that it did and does appear from the evidence taken before the said justice in the examination that the crime of arson in the third degree had been committed, and that there was and is sufficient cause to believe Wright guilty thereof; and in further traverse the relator alleged that there was "no sufficient evidence before said justice, on said examination, that said crime had been committed, or sufficient cause to believe the said Wright guilty thereof." The defendant then demurred to the traverse on the ground that it did not state facts sufficient to constitute a traverse, and the court thereupon made order that the said demurrer be sustained.

When the defendant is brought before the magistrate he is entitled to be informed of the charge, the depositions taken are to be read, the deponents may be examined, and other witnesses may be called. The testimony taken must be reduced to writing, and preserved. After hearing the proofs, if it appear that a crime has been committed, and there is sufficient cause to believe the defendant guilty, the magistrate must indorse on the depositions and statements, if any, an order, signed, to the following effect:

"It appearing to me by the within depositions (and statement, if any) that the crime therein mentioned (or any other crime according to the fact, stating generally the nature thereof) has been committed, and that there is sufficient cause to believe the within-named A. B. guilty thereof, I order that he be held to answer to the same."

Thus, such authority of a magistrate can only be exercised if it appear (1) that a crime has been committed, and (2) there is sufficient cause to believe the defendant guilty upon the proofs. He has no arbitrary power. He is not, like the French king of old, free to issue a lettre de cachet. He is a magistrate who must act with jurisdic-

tion. And he has no jurisdiction until it be made to appear by evidence that a crime has been committed, and there is sufficient cause to warrant the belief that the defendant committed it. If his commitment is final in the sense that the proceedings preliminary cannot be scrutinized at all, here is absolute power vested in a committing magistrate that would wake envy in the shade of either Charles of England. The commitment returned in this case is the mittimus provided for by section 213 of the Code of Criminal Procedure. It was based upon an order authorized by section 208 thereof, which is described in section 213 as the order for commitment, which order could only be made when the magistrate had acquired jurisdiction. The mittimus is merely a protection and an authority to the sheriff, or a direction to him to convey the defendant into custody. People v. Baker, 89 N. Y. 460; Same v. Johnson, 110 N. Y. 134, 17 N. E. 684. And the defendant is detained by the sheriff because the magistrate has made the order provided for in section 208, whereby the commitment issues. It is said in the Baker Case that the warrant was merely a mittimus, and that a prisoner properly sentenced cannot be discharged on a mere defect therein, for a proper one could be supplied at any time. And so section 2035 of the Code provides that, if a commitment be irregular, the court must bail or remand. Section 2015 of the Code of Civil Procedure provides that a person imprisoned or restrained in his liberty within the state for any cause, or upon any pretense, is entitled, except in one of the cases specified in the next section, to a writ of habeas corpus, or a writ of certiorari, as prescribed in this article, for the purpose of inquiring into the cause of the imprisonment or restraint, and, in a case prescribed by law, of delivering him therefrom. Section 2039 provides:

"A prisoner produced upon the return of a writ of habeas corpus, may, under oath, deny any material allegation of the return, or make any allegation of fact, showing either that his imprisonment or detention is unlawful, or that he is entitled to his discharge."

The traverse, on information and belief, denies that it did or does appear from the evidence taken by and before the said justice on said examination that the crime of arson in the third degree had been committed, and that there was and is sufficient cause to believe that the said George S. Wright is guilty thereof, and that there was no sufficient evidence before said justice on said examination that the said alleged crime had been committed, or sufficient cause to believe the said Wright guilty thereof. This negatives, in the language of the statute (section 207, Code Cr. Proc.), the existence of facts that must be established before the magistrate acquired jurisdiction; and, in effect, asserts that the statute (section 207, Id.) applies. It alleges, in other words, that there were no facts that justified jurisdiction, for, of course, the magistrate must act upon the evidence; and if it did not appear from the evidence that the crime had been committed, and that there was sufficient cause therein for belief that the defendant was guilty, then the defendant was improperly held. An indictment in the language of the statute is good (People v. West, 106 N. Y. 293, 12 N. E. 610), and I see no reason for requiring such traverse in any other form. Indeed, it is difficult to see in what

other form this kind of traverse could be drawn unless it set forth all of the testimony taken on the examination, or, at least, summarized it, which would be pleading the very evidence which the court is asked by the writ to examine, and which would serve no purpose. Whatever criticism may be made upon the phrase "sufficient evidence," the defendant first denies that it did or does appear from the evidence taken by or before the said justice on said examination that the said alleged crime had been committed, and there was or is sufficient cause to believe Wright guilty thereof. In People v. New York Catholic Protectory, 106 N. Y. 604, 13 N. E. 435, the traverse was, in substance, that the defendant had done no act prohibited by the section of the Penal Code under which she was convicted, and the court, per Andrews, J., say, "It was not alleged in the traverse that there was no evidence before the justice of the facts adjudicated by him." The learned judge says that, while the traverse may show that the child was wrongfully charged, yet, he states, "it cannot be inferred that no evidence justifying the finding by the justice of that fact was not produced before him." I find here plain intimations that such traverse would have been sufficient. An issue of fact, says Church (Hab. Corp. § 170), may always be formed upon the return by a denial of its averments. In People v. Moss, 6 App. Div. 414, 417, 39 N. Y. Supp. 690, 692, the court, per Rumsey, J., say:

"Proceedings in these cases are not governed by the strict rules of pleading which are applicable to civil actions. They are summary in their nature, and the only requirement is that there shall be presented to the court or judge some facts or allegations in such a way that he may know that the allegations of the return are denied. The statute does not say that such denials or allegations must be by way of formal traverse, although, as matter of practice, they are made by a traverse to the return, but they may be made by affidavit, or they may even be made orally. The statute does not prescribe any manner in which the return shall be denied. The question was presented to the supreme court under the Revised Statutes, the provisions of which are substantially like those of the Code of Civil Procedure, and it was held that the denial might be made not only by traverse but by affidavit; and such a denial was received in the case of People v. Chegaray, 18 Wend. 637, 641, where the question was thoroughly discussed whether denials by affidavit might or might not be permitted. In that case Judge Bronson, delivering the opinion of the court, said that affidavits, not only of the relator, but of other people, would be received for the purpose of denying the return, and such affidavits were considered in disposing of the case."

In People ex rel. Danziger v. Protestant Episcopal House of Mercy of City of New York, 128 N. Y. 180, 28 N. E. 473, cited by the learned district attorney, the traverse was made in a case which dealt with a prisoner held by final judgment. And the court say that, if thereby it was intended to bring in question the sufficiency or competency of the evidence offered in support of the conviction, a writ of certiorari for review should have been obtained, which would have required a return of the evidence taken on the trial. In the case at bar the hearing is not upon a judgment of conviction. The certiorari referred to in the Danziger Case is that issued to review a judgment, not the statutory writ provided for in our habeas corpus act. Here I might rest if the issue were confined to the sufficiency of the traverse, but the authority of the court to go behind the re-

turn is challenged both by the argument and by the printed brief. Allen, J., in People ex rel. Tweed v. Liscomb, 60 N. Y. 565, says that the history of this writ was lost in antiquity, that the relief afforded by it is not the creature of any statute, and that it was in use before Magna Charta. "The statutes of parliament that were passed from time to time," says Hallam (chapter 13, Const. Hist.), "introduced no new principle nor conferred any right upon the sub- ject." And yet men are accustomed to laud the statutes, rather than the great principle of the common law. It is natural that both Englishmen and Americans should do this, for the statutes of parlia- ment were aimed at encroachments upon the province of the writ in the assertion of the king's prerogative or the king's privileges above the law, or the assumption of power by the judges, and, though remedial and perfecting (Hall. Const. Hist. c. 13; People ex rel. Tweed v. Liscomb, supra; People v. Porter, 1 Duer, 714), were brave assertions against the king and his camerilla or his council, or his servile or his cowed judges. The statutes marked the independence of the legislature, and its stubborn devotion to the law of the land and to the freedom of the subjects thereof. Thus, acts done in vin- dication and assertion of the common law have been heralded as stat- utory declarations of new principles.

I do not propose to review the history of this writ, and it might smack of pedantry to do it. It has been written by far abler hands than mine. Darnel's Case (3 State Tr. 1), the asserted privilege of the return therein, the sturdy struggle of the commons against the dough-faced judges, and the long line of precedents arrayed in the conference between commons and peers, are interesting to the stu- dent. Whether the speech of Jenkes in Guildhall, and his commit- ment by the king in council, resulted in the famous statute (31 Car. II. c. 2), as Blackstone asserts, or whether it had little to do with it, as Hallam contends, whether the habeas corpus act was passed to affront Clarendon, and whether it was passed by a trick of one teller, Lord Grey, against his fellow teller, Lord Norris, conceived by a jest, as Barnett has it, are of like interest. But they serve no pur- pose germane to the question now before the court.

In 1807, in Ex parte Swartwout, 4 Cranch, 75, 2 L. Ed. 554, Mar- shall, C. J., said:

"I understand the clear opinion of the court to be (if I mistake, my Brethren will correct me) that it is unimportant whether the commitment be regular in point of form or not; for this court, having gone into an examination of the evidence upon which the commitment was grounded, will proceed to do that which the court below ought to have done."

In Ex parte Watkins, 3 Pet. 202, 7 L. Ed. 653, Marshall, C. J., said:

"The writ is, as has been said, in the nature of a writ of error which brings up the body of the prisoner with the cause of commitment. The court can undoubtedly inquire into the sufficiency of that cause; but, if it be the judgment of a court of competent jurisdiction, especially a judgment with- drawn by law from the revision of the court, is not that judgment, in itself, sufficient cause?"

In People v. McLeod, 25 Wend. 568, Cowen, J., said:

"Nothing is better settled on English authority than that on habeas corpus the examination as to guilt or innocence cannot, under any circumstances, ex-

tend beyond the depositions or proofs upon which the prisoner was committed. This would be so even on habeas corpus before an indictment found, however loosely the charge might be expressed in the warrant of commitment."

Until 1787 the English habeas corpus was in force as part of our common law. Porter Case, supra; Tweed's Case, supra. Our statute of 1787 was a literal transcript of the original English statute, and was substantially re-enacted by chapter 65, Laws 1801, and by chapter 57, Laws 1813. Chapter 277 of the Laws of 1818 added efficiency; so that Kent, in speaking of the last-named statute, said: "By the New York Revised Statutes which went into operation on January 1, 1830, all the statute provisions on the subject of the writ of habeas corpus were redigested," and, speaking of the statute of 1818, he says it "enlarged the extent of the application of the writ. * * * It gave to the officer before whom the writ was returned authority to revise the cause of commitment, and to examine into the proof of the facts alleged in the return." Part 4, lect. 24, p. *29. But no inquiry is to be made into the legality of any process, judgment, or decree, or the justice or propriety of commitment in the case of persons detained under process of the United States, where the court or officer has exclusive jurisdiction, nor where the party is detained under the final decree or judgment of a competent court, nor where the commitment, made by any court, officer, or body, according to law, is for a contempt, and duly charged. The remedy, if the case admits of one, is by certiorari or writ of error. The court or officer awarding the writ may, in other cases, examine into the merits of the commitment, hear the allegations and proofs arising thereon in a summary way, and dispose of the party, as justice may require. Id. pp. *30, *31. The Code provisions are founded on the Revised Statutes, and are in furtherance thereof. Section 2031 requires an examination into the facts alleged in the return, and into the cause of the imprisonment or the restraint, and a final order of discharge, if no lawful cause for imprisonment be shown, "whether the same was upon a commitment or supposed criminal matter," etc. Section 2032 requires remandment forthwith in certain specified cases, which exclude the case of a commitment for the action of a grand jury; and section 2034 prohibits inquiry into the legality or justice of any such mandate, judgment, or decree or final order. Thus the scheme that forbids inquiry into the legality or justice of only such process as is specified in the statute as requiring an immediate remand plainly indicates that the contrary is the rule in other cases. Section 2035 provides that, if the prisoner has been legally committed for a criminal offense, or if he appears, upon the testimony offered upon the return, to be guilty of such offense, although the commitment is irregular, the court must bail, if the offense be bailable, or remand. Section 2039 empowers the prisoner on the return to deny any material allegation of the return, or make any allegation of fact showing that his imprisonment or detention is unlawful, or that he is entitled to his discharge. Thereupon the court or the judge must proceed in a summary way to hear the evidence produced in support of or against the imprisonment or detention, and to dispose of the prisoner as the justice of the case requires.

If the mere commitment were conclusive, then the writ would be largely shorn of its strength. The mere return of the magistrate would make his ipse dixit final, no matter how absurd, or wicked, or wanton his determination, when tested by the facts before him, might be. To hold this would be to travel backward into another century, and to undo the principles of the law and the statutes. Church (Hab. Corp. p. 319) cites the pithy example stated by Grier, J., in Ex parte Jenkins, 2 Wall. Jr. 521, 528, Fed. Cas. No. 7,259:

"A. tells B. that he has seen C. kill D. B. runs off to a justice, swears to the murder boldly, without any knowledge of the fact, and takes out a warrant for C., who is arrested and imprisoned in consequence thereof. C. prays for a habeas corpus, and shows that he was the sheriff of the county, and hanged D. in pursuance of a legal warrant. If a court could not discharge a prisoner, in such a case, because the warrant is regular on its face, the writ of habeas corpus is of little use."

Gustave Le Bon, writing of France, in 1896, says:

"The magistrate is, in point of fact, the only administrative officer whose acts are under no control. In spite of all its revolutions, democratic France does not possess that right of habeas corpus of which England is so proud. We have banished all the tyrants, but have set up a magistrate, who disposes at will of the liberty and honor of the citizens. An insignificant 'juge d'instruction' fresh from the university possesses the revolting power of sending to prison at will persons of the most considerable standing on a simple supposition on his part of their guilt, and without being obliged to justify his act to any one."

In 1825, in Ex parte Tayloe, 5 Cow. 50, Savage, C. J., said:

"But in all cases on habeas corpus, previous to indictment, the court will look into the depositions before the magistrate or before the coroner's inquest; and, though the commitment be full, and in due form, yet, if the testimony proves no crime, the court will discharge or bail; and, though the commitment be defective, yet, if the depositions contain evidence of an offense not bailable, the prisoner will be remanded."

Such was the decision of the court in People v. Martin, 1 Parker, Cr. R. 187; in Same v. Tompkins, Id. 224; in Same v. Richardson, 4 Parker, Cr. R. 656; in Re Prime, 1 Barb. 349; in Re Henry, 13 Misc. Rep. 735, 35 N. Y. Supp. 210; in People v. McFarline, 25 App. Div. 629, 49 N. Y. Supp. 599; and in Re Martin, 5 Blatchf. 308, Fed. Cas. No. 9,151. In Re Simon (Sup.) 13 N. Y. Supp. 399, it was held that, when the traverse denied the proof of any material facts, and it was not demurred to, and there was no admission of the facts stated therein, the allegations of the traverse are deemed to be true. The court reversed the order, and remitted the matter to the special term for a hearing, citing the language of section 2039 of the Code of Civil Procedure. This case was reversed in People ex rel. Danziger v. Protestant Episcopal House of Mercy of City of New York, supra; the court saying:

"We are of opinion that the order of the judge was erroneous, and that, it having been conceded by the established facts that the prisoner was held under the final judgment of a competent tribunal of competent jurisdiction under the express provisions of the Code, she should have been remanded. * * * Section 2039 * * * has no application, unless the material allegations of the return showing jurisdiction are controverted by a proper traverse."

So the reversal does not affect the principle. People ex rel. Tweed v. Liscomb, supra; People v. Warden of New York Co. Jail, 100 N. Y. 24, 2 N. E. 870.

The cases cited contra are distinguishable. In Bennac v. People, 4 Barb. 31, there was no traverse, and there had been a conviction. In People v. Cassels, 5 Hill, 164, Bronson, J., said that a contempt was specially and plainly charged in the commitment, and therefore it was the duty of the judge to remand (2 Rev. St. 567, § 40); for the statute expressly forbids the inquiry (section 42). Johnson's Case, supra, was a trial for murder committed while in prison. There was objection to the admission in evidence of the commitments on the ground of their noncompliance with the Code, and that the justice had no right to issue them. The court of appeals said it presumed that the objection was taken with the purpose of raising the question that the defendant was nòt lawfully confined in jail. It said that the commitment was a mere protection to the jailer, as showing his authority; and held that it was not incumbent on the people, in order to make out a prima facie case that the defendant was lawfully in jail, to put in evidence the proceedings taken on the examination, inasmuch as it was shown that he was arrested on a valid warrant, issued by competent authority, examined before an authorized magistrate upon a charge, and held to answer, and that a commitment was then made. The court further said that no affirmative evidence had been given that the magistrate had omitted any act, and concluded that, as the jurisdiction of the magistrate over the subject of the examination and the person of the defendant had been established, he had the authority to make the commitments in question, and the recitals therein were presumptive evidence of the facts. This is not an authority in a case of habeas corpus where there was not contention that there was no proper warrant of commitment, but where there was traverse to the return that there was no sufficient cause for the action of the magistrate, and the relator thereby sought to review the testimony on which the magistrate founded his order for commitment. I am of opinion that if, upon review, it appear that there was any evidence before the magistrate that the crime was committed by the defendant, jurisdiction is established. People ex rel. Danziger v. Protestant Episcopal House of Mercy of City of New York, supra; In re Prime, supra; In re Henry, supra; Church, Hab. Corp. p. 236. The function of the court is not to review the preliminary examination in order to decide the question anew, or to supplant the examination of the magistrate by its own examination, but to ascertain whether the magistrate had jurisdiction to commit the prisoner.

The writ of certiorari provided for in the habeas corpus act is statutory, and is not a writ of review. It should not be confounded with the common-law writ, which we have adopted by statute, whose purpose is to review the decision of inferior courts, bodies, and tribunals. The final section of article 7 of the Code of Civil Procedure reads:

"This article is not applicable to a writ of certiorari brought to review a determination made in any criminal matter, except a criminal contempt of court."

The writ of certiorari in the habeas corpus act calls for the same return as the writ of habeas corpus, save that the body of the defendant need not be brought up. It is obtained on the same petition and upon the same facts as a writ of habeas corpus (section 2019, Code Civ. Proc.), and is subject to the same proceedings (section 2042, Id.). This subject is thoroughly and ably discussed by Walter Lloyd Smith, J., in People v. Seaman, 8 Misc. Rep. 152, 29 N. Y. Supp. 329, with whose reasoning and conclusions we entirely concur. Further discussion is, therefore, unnecessary. See, however, Hurd, Hab. Corp. 351; Church, Hab. Corp., note, p. 322. It is contended that by section 515 of the Code of Criminal Procedure writs of certiorari are abolished. But in People v. Forbes, 143 N. Y. 219, 38 N. E. 303, the court held that the special proceedings of criminal nature referred to in this section are those designated as such in the Code, and so limited the effect of section 515.

I have striven to show that the principle upon which the writ rests, the statutes which declare the principle and perfect the remedy, and the precedents which affirm the principle or apply the remedy, expound the common law, or interpret the statutes, all secure to the defendant the right that was denied to him. It has seemed proper to declare this at some length for the reason that the courts cannot too often assert the perennial power and the searching force that are the attributes of the habeas corpus. Even that Englishman who let nothing escape his shafts of wit thought it well to write:

"When a nation becomes free, it is extremely difficult to persuade them that their freedom is only to be preserved by perpetual and minute jealousy."

Order reversed, and prisoner discharged. All concur.