## PEOPLE v. SHENK.

(Court of Special Sessions, New York County.   June Term, 1913.)

1. CRIMINAL LAW (§ 213*)—COMMITMENT—DEFECTIVE INFORMATION.

Although an information in a magistrate's court is defective, yet, if the evidence taken on the hearing is sufficient to justify the holding of defendant, the defect will be cured.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 431–433; Dec. Dig. § 213.*]

2. INDICTMENT AND INFORMATION (§ 129*)—JOINDER OF OFFENSES.

Under Code Cr. Proc. § 279, providing that, where the acts complained of may constitute different crimes, such crimes may be charged in separate counts of the same information, where the information before the Magistrate's Court charged defendant with maintaining a public nuisance, the district attorney is warranted in adding counts in the information in Special Sessions (1) for keeping and maintaining a house of ill fame, and (2) for keeping a disorderly house, if the acts complained of might constitute these different crimes.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 414–418;  Dec. Dig. § 129.*]

3. CRIMINAL LAW (§ 238*)—INFORMATION—MOTION TO DISMISS—EVIDENCE.

Upon a motion to dismiss an information, evidence before the committing magistrate *held* insufficient to show that defendant had any connection with the maintenance of a disorderly house.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 493;  Dec. Dig. § 238.*]

4. CRIMINAL LAW (§ 238*)—COMMITMENT—SUFFICIENCY OF EVIDENCE.

A committing magistrate is not required to exact the full measure of proof necessary to secure a conviction, yet a prima facie case must be made out, or such a case that the trial court would not be bound to grant a motion to acquit at the close of the people's case;  there must be reasonable ground for believing that a crime has been committed, and that the defendant is guilty thereof.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 493;  Dec. Dig. § 238.*]

5. CRIMINAL LAW (§ 207*)—JURISDICTION—COMMITTING MAGISTRATE.

Although a committing magistrate, because of insufficiency of evidence, had no jurisdiction to hold a defendant, and hence could confer no jurisdiction on the Court of Special Sessions to try, even by the district attorney filing an information, the Special Sessions in the "exercise of jurisdiction" has the sole right to pass upon the question of jurisdiction, subject to review on appeal, if this determination is adverse to defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 414, 418, 440; 472–475;  Dec. Dig. § 207.*]

6. INDICTMENT AND INFORMATION (§ 144*)—MOTION TO DISMISS.

Where a committing magistrate, because of insufficiency of evidence, had no jurisdiction to hold a defendant, and an information, based thereon is filed by the district attorney in the Court of Special Sessions, the correct practice is by motion to dismiss the information in that court, which will pass upon the information, evidence, and depositions in the Magistrate's Court, and, if found insufficient to hold, then the information in this court, based thereon, will be dismissed, provided where the circumstances warrant the court will instead direct defendant to avail himself of the remedy by demurrer or in arrest of judgment.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 488;  Dec. Dig. § 144.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. CRIMINAL LAW (§ 176*)—JURISDICTION—FORMER JEOPARDY.

    The setting aside of an information in this court on motion of defendant on the ground that the evidence before the committing magistrate was insufficient to authorize him to hold defendant is not a bar to a further prosecution.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 291, 300, 304–306, 356, 358–360; Dec. Dig. § 176.*]

8. INDICTMENT AND INFORMATION (§ 144*)—DISMISSAL—RELEASE OF DEFENDANT.

    Under Code Cr. Proc. §§ 313–320, where an information is set aside on motion of defendant because of the insufficiency of the evidence before the committing magistrate, the Court of Special Sessions has the power to direct that the case be resubmitted and to hold the defendant to bail.

    [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 488; Dec. Dig. § 144.*]

Joseph Shenk was informed against for crime, and moves to set aside the information. Motion granted.

Argued before COLLINS, FORKER, and MOSS, JJ.

Charles S. Whitman, Dist. Atty., of New York City, James E. Smith, Asst. Dist. Atty., of Olean, and Frederick Sullivan, Asst. Dist. Atty., of New York City, for the People.

House, Grossman & Vorhaus, of New York City (Willard H. Olmsted and Herman Joseph, both of New York City, of counsel), for defendant.

COLLINS, J. This is a motion to dismiss the action or to set aside the information in accordance with the provisions of chapter 5, tit. 5, pt. 4, of the Code of Criminal Procedure, on the ground that on the proceedings and examination in the Magistrate's Court the evidence was insufficient to justify the conclusion by the magistrate that it did appear that a crime had been committed and that there was sufficient cause to believe the defendant guilty thereof, as required by section 208 of the Code of Criminal Procedure, and hence was insufficient on which to base an "information" in the Court of Special Sessions.

[1, 2] The "information" filed by the district attorney contains three separate counts charging the defendant with the crime of: (1) Keeping and maintaining a house of ill fame; (2) keeping a disorderly house; (3) maintaining a public nuisance (on April 28, 1913, and a long time prior thereto). It is sufficient in form and substance and is not susceptible of successful attack on its face.

The "information" in the Magistrate's Court charges the defendant, on the complaint of one Eugene Gutmann, with the crime of maintaining a public nuisance on or about April 28, 1913, in violation of section 1530 of the Penal Law (Consol. Laws 1909, c. 40)—

"in that the said defendant having charge of premises of 62 West 107th street and being the lessee thereof, did commit an act which annoys, injures, and endangers the comfort, repose, health, and safety of a considerable number of persons, and offends public decency, in the manner and under the circumstances following, to wit: The defendant having charge of said premises permitted to reside therein a number of women on various floors thereof, who are of bad character, and who use loud, vile, indecent, filthy, and disgusting

language in loud tones; that men and women stand by the windows in almost a nude condition at various hours of the day and night; that during the night hours there are loud noises emanating from the place, which disturbs the residents of adjoining houses. Wherefore deponent charges defendant with maintaining a public nuisance and prays that he be held to answer and be dealt with according to law."

This information states facts sufficient to allege a nuisance, though as a matter of technical pleading, in order to connect the defendant, it would have been well to allege, in addition to his having permitted to reside therein, etc., women of bad character, etc., that their character and the practices said to have been indulged in by them were known to the defendant. The question of the sufficiency of the information itself need not be passed on, however, for the reason that it is not relied upon as a ground for this motion. Even if defective, for the reason suggested, if the evidence taken on the hearing were sufficient to justify the holding of defendant, the defect would be cured (Peo. ex rel. Willet v. Quinn, 150 App. Div. 813, 135 N. Y. Supp. 477), and it would seem by virtue of the provisions of section 279 of the Code of Criminal Procedure, relating to indictments, the district attorney would have been warranted in adding the counts in the information in Special Sessions charging house of ill fame and disorderly house for the reasons that the acts complained of might constitute these different crimes. An examination was had herein before a magistrate, and a complete transcript of the official stenographic minutes filed with this court under a stipulation that it shall be received for the purposes of this motion as if it had been filed in accordance with the requirements of section 221 of the Code of Criminal Procedure.

[3] The premises 62 West 107th street is a large apartment house. At the hearing the complainant testified:

"I was a resident of a house adjoining the premises in question. In April I saw three women in a courtyard of 62 West 107th street smoking cigarettes 'right almost underneath our window' at about midnight, and one young man asked one of the young women to go with him upstairs; she objected and said, 'I am not as cheap as you take me for,' and something witness couldn't understand. The women were dressed in street clothes. On another occasion in April, about 5 o'clock in the morning, two couples, men and women, came in drunk, and running upstairs one of the women held her dress over her knee, the two men laughed, and to make them laugh more she exposed herself. The stairway was in full view of my apartment. In front of our window in the street I have seen at least 11 young men talking to one another to go upstairs (of No. 62); they wanted to know which apartment they should go to. Q. Did you have any conversation in April with the defendant? A. No. Q. When did you have a conversation with the defendant? A. I wrote the defendant some letters quite some time ago, over a year ago. I saw him going out of court last week; the defendant says to me, 'You are a nice one;' that is all. I did not in the month of April, after these acts were committed report them to the defendant. I did not notify any person that that individual should notify this defendant so that he might acquire knowledge that these acts were going on and thereby stop it."

Another tenant of the premises in which the complainant resided testified:

"On April 28th I had occasion to observe the premises (No. 62), and for nearly two years I heard fighting and swearing in this apartment at the

hours of 2 or 3 in the morning. I have seen women in various apartments in the windows in various stages of undress smoking cigarettes; every one could see it. I saw women undressed and partly undressed and yelling down to a janitor, known as Bob, at hours between 12 and 5 in the morning, swearing and fighting, throwing beer bottles through the window. The last time it occurred was about three weeks ago, around April 28th. I didn't see anything at that time but there was quarreling and swearing at 3 and 4 o'clock Sunday morning. I complained to the defendant at least four times, not recently, because the last time I did complain he told me it wouldn't do me any good. I complained to the police four times altogether. At this time in April I complained to the police. I can't tell much about the particular time. At the time of the arrest I accompanied the officer and went through the house; the officer notified the tenants that the owner of the place or the lessee was under arrest. The occupant of one apartment answered profanely and said, 'We are going to move to-morrow anyhow.' I saw the defendant in the house and identified him."

On cross-examination the witness threw no new light on the subject and spoke of the apartments "that he has control of," referring to the defendant, but there was no proof of "control."

A police officer testified:

"I visited the premises 62 West 107th street on April 29, 1913 (one day after date mentioned in information), and after being in an apartment about 20 minutes I placed a woman under arrest for violation of section 150 of the tenement house act (prostitution). Consol. Laws 1909, c. 61. She was sentenced the next day to the workhouse for six months. I had a conversation with the defendant the next day and served his janitor with a subpoena to bring him down to the court and prove the fact it was a tenement house. I met the defendant downstairs in the foyer of the house. I said, 'Do you live in this house?' He says, 'Sometimes.' I says, 'Well you are living here to-day with your family?' He said, 'Yes, sir.' I said, 'Does your wife do her own cooking here?' He said, 'Yes, sir.' I did not ask him whether he owned the premises. I don't know whether, after conviction, the tenant I arrested was dispossessed."

Another tenant of adjoining house testified to seeing women expose themselves standing around windows and seeing several men and women going up and down stairs at all hours of the night. "You can hear everything, cursing and all kinds of language." She did not make any complaint to the defendant.

The foregoing is, in substance, all of the testimony. At the close of the hearing defendant's counsel moved to dismiss "upon the ground that the people have not in any way shown any connection with this defendant with the premises in question," which motion was denied, and in this court the defendant's main contention is based "on the ground that the testimony taken before the magistrate does not show that the defendant had any relation whatever with the premises in question; further that there is nothing in any way connecting him with the disorderly acts in question." If the defendant were the owner, lessee, or in control of the premises in question and knowledge were brought home to him of the conditions complained of, and he permitted them to continue or failed to make an earnest effort to correct such conditions, with reasonable diligence, there would be sufficient basis to conclude that a crime had been committed and that there was sufficient cause to believe the defendant guilty thereof.

[4] A committing magistrate is not required to exact the full measure of proof necessary to secure a conviction, but is obliged to hold

one accused of crime for trial if there is reasonable ground to believe him guilty. But there must be proof "that a crime had been committed and that there was sufficient cause to believe the defendant guilty thereof." People ex rel. Willet v. Quinn, supra; People ex rel. Perkins v. Moss, 187 N. Y. 410, 80 N. E. 383, 11 L. R. A. (N. S.) 528, 10 Ann. Cas. 309; People ex rel. Bungart v. Wells, 57 App. Div. 140, 68 N. Y. Supp. 59; Code of Criminal Procedure, § 208.

In the Bungart Case, 57 App. Div. 143, 68 N. Y. Supp. 61, the court, speaking of the magistrate's authority to hold for trial, says:

"Such authority of a magistrate can only be exercised if it appear: (1) That a crime has been committed, and (2) that there is sufficient cause to believe the defendant guilty upon the proofs. He has no arbitrary power. He is not like the French King of old, free to issue a lettres de cachet. He is a magistrate who must act with jurisdiction. And he has no jurisdiction until it be made to appear by evidence that a crime has been committed, and there is sufficient cause to warrant the belief that the defendant committed it. If his commitment is final in the sense that the proceedings preliminary cannot be scrutinized at all, here is absolute power vested in a committing magistrate that would wake envy in the shade of either Charles of England."

In the case at bar there does not seem to be any proof that the defendant was the owner, lessee, or in control of the premises in question. Mere suspicion, however well founded, is not sufficient upon which to predicate guilt. People v. Owens, 148 N. Y. 648, 43 N. E. 71. True there were some statements on the part of one witness, referring to the apartments, that the defendant "has control of," but this was a conclusion entirely unsupported by any tangible evidence. Hence, granting the evidence establishes that a public nuisance existed, there is absent that very essential element that there is sufficient cause to believe the defendant guilty of having maintained it; that he was the owner, lessee, or in control, etc. Applying the doctrine stated in the Willet Case that a committing magistrate is not required to exact the full measure of proof to secure a conviction, yet it would seem that a prima facie case must be made out, or such a case that the trial court would not be bound to grant a motion to acquit at the close of the People's Case, if the evidence were the same.

In cases similar to the one at bar there is a very natural inclination on the part of magistrates and justices of the Court of Special Sessions to infer freely from the facts. Unfortunate women involved in the social evil furnish sad examples of shame and degradation; many of such cases coming in our courts are revolting and stir the strongest emotions of resentment, and many excite the deepest feelings of pity. When a man, however, so far prostitutes himself as to engage in "the traffic," he is a vile despicable creature at all times, and it is difficult to control one's self when sitting in judgment. Great care should be exercised therefore; conviction damns that creature forever in the minds of men.

It should be borne in mind what was said by the Court of Appeals in People ex rel. Tweed v. Liscomb, 60 N. Y. 569, 19 Am. Rep. 211, that:

"The law is no respecter of persons and suffers no man, be he guilty or innocent, to be deprived of his liberty, except 'by due process of law'; and the writ of habeas corpus is as available, even to the guilty and he whom the

popular voice would condemn, as it has proved against commitments by the King in council."

[5] Having reached the conclusion that the evidence in the Magistrate's Court was insufficient to hold the defendant for trial, the question becomes one of practice or procedure. We have been urged in such an event to write an opinion that might serve as a precedent regulating the practice in such cases in this court.

We are mindful of the admonition in People v. Herbert, 152 App. Div. 579, at page 580, 137 N. Y. Supp. 409, 410, where the information was dismissed on a similar charge, and the court said:

"But, even if this information was in fact insufficient and might be so held upon demurrer, we think its insufficiency was not so apparent and free from doubt as to require the recorder (Albany) to dismiss it on motion. The rule is thus laid down * * * in People v. Davis, 56 N. Y. 95, 100: 'It is in the discretion of the court whether or not to set aside a defective indictment upon motion; and, unless the question is free from doubt, the court ought not to do it, but leave the counsel to his demurrer, or motion in arrest of judgment.'"

This course is all the more prudent because no appeal lies from an order granting such a motion. In the case at bar, however, there is no defect in the information in this court nor one that would of itself be available in the Magistrate's Court. Demurrer would not lie, nor would it seem that a motion in arrest of judgment would serve any useful purpose in view of the conclusion reached in this case. In order to arrive at a decision, it was necessary to consider the information and the evidence taken in the Magistrate's Court in the same manner that the Court of General Sessions might consider a similar application on a motion to set aside an indictment after an inspection of the minutes of a grand jury. Is this practice correct? Has Special Sessions this jurisdiction? If clothed with this authority, then deliberation on a motion of this kind would be much the same and be governed by the same rules of law, on the merits, as prevail in habeas corpus proceedings, in the first instance.

In almost all reported cases reviewing the determination of a magistrate holding a defendant for trial, the procedure has been by habeas corpus and certiorari. In the recent case of People ex rel. Rosa Hertz v. Warden, 149 App. Div. 134, 134 N. Y. Supp. 443, a procedure seems to have been outlined which is likely to greatly reduce the number of applications for a writ when the defendant is held for trial in this court, especially when the district attorney has duly filed the information.

In the Hertz Case the defendant was held by a magistrate on the charge of maintaining a disorderly house and applied for a writ of habeas corpus to test the magistrate's act on the ground that the facts stated did not constitute a crime, and that hence the magistrate was without jurisdiction. The writ was dismissed and an appeal taken to the Appellate Division. In the meantime the information was filed in the Court of Special Sessions. The district attorney then moved to dismiss the appeal on the ground that the magistrate's proceedings were superseded by the information filed in the Court of Special Sessions. Adopting this view, the court said (People ex rel. Hertz v.

Warden, 149 App. Div. 939, 134 N. Y. Supp. 443), after reciting the facts:

"Thus the relator is now held under the commitment of the magistrate; * * * the information filed by the district attorney in the Court of Special Sessions and the plea thereto. It thus becomes entirely immaterial whether the original charge was sufficient to justify the arrest of the relator under the warrant of the magistrate. The case has been removed from that jurisdiction to the Court of Special Sessions; and, if this court should hold that the original arraignment before the magistrate was based upon an insufficient charge, the relator would not be entitled to be discharged, as the subsequent commitment by the magistrate and the arraignment and plea before the Court of Special Sessions superseded the original warrant of the magistrate."

Subsequently another writ was obtained alleging that the Court of Special Sessions had not acquired jurisdiction because the magistrate had not jurisdiction to hold, on which fact the jurisdiction of Special Sessions depended. The writ was dismissed at Special Term October 17, 1912. An appeal was taken and the same reasons urged. The district attorney contended that habeas corpus was not the relator's remedy—

"that the questions raised do not go to the jurisdiction of the Court of Special Sessions but are questions to be determined by it in the 'exercise of its jurisdiction'; that, after the holding for trial and filing of an information in Special Sessions, the practice became the same as proceedings after an indictment."

This view was upheld by both the Appellate Division and Court of Appeals, without opinion. People ex rel. Hertz v. Warden, 154 App. Div. 888, 138 N. Y. Supp. 1136; Id., 207 N. Y. 685, 101 N. E. 1117.

It follows that even though the magistrate had not jurisdiction to hold, etc., and hence could confer no jurisdiction on Special Sessions to try, even by the intervention of the District Attorney filing an information, Special Sessions in the "exercise of jurisdiction" has the sole right to pass upon the question in the first instance, and, if its determination is adverse to the defendant, he has the right to review on appeal from the final judgment. People ex rel. Moore v. Warden, 150 App. Div. 644, 135 N. Y. Supp. 883.

[6] Subdivision 4 of section 31 of the "Inferior Courts Act" (chapter 659, Laws 1910) provides:

"All sections of the Code of Criminal Procedure consistent with this act regulating and controlling the practice and procedure of the court of general sessions * * * shall apply, as far as may be, to the practice and procedure in the Court of Special Sessions, and shall regulate and control the practice * * * of the said court, in so far as its jurisdiction and organization will permit."

In construing this provision, the Appellate Division said (People v. Hammerstein, 150 App. Div. 212, 134 N. Y. Supp. 730):

"We think it was the intention of the Legislature to give to both parties to an action pending in the Court of Special Sessions the same privilege both in relation to the trial and the proceedings subsequent to the judgment as was provided for the parties in a proceeding pending in the Court of General Sessions. * * * This construction of the statute makes the practice in both courts harmonious and, we think, preserves both the rights of the people and the defendant."

The practice in General Sessions in proceedings to set aside an indictment, etc., is clearly indicated in People ex rel. Moore v. Warden, supra, and in People v. Stern, 33 Misc. Rep. 455, 68 N. Y. Supp. 732, where the court (Foster, J.), holding that where there is no legal evidence sufficient to sustain an indictment it should be dismissed, says:

"Section 258 of the Code of Criminal Procedure provides that an indictment should be found where the evidence would warrant a conviction by a trial jury and by implication, not otherwise. A humane interpretation of the law is that the grand jury is forbidden to find an indictment without sufficient legal evidence, * * * which proves the crime, so that a trial jury would convict. * * * 'It is as important to a person that he be fairly accused of crime as that he be fairly and impartially tried therefor.'"

While as applied to the Magistrate's Court the proof need not be sufficient to "insure conviction," the principle is the same.

Section 313 of the Code of Criminal Procedure provides on what ground an indictment may be set aside on motion. The defendant, however, is not limited to the grounds therein stated, and the proceedings had before a grand jury may be reviewed by motion to dismiss an indictment or in arrest of judgment. People v. Glen, 173 N. Y. 395, 66 N. E. 112; People v. Sexton, 187 N. Y. 511, 80 N. E. 396, 116 Am. St. Rep. 621. It would seem, therefore, that the correct practice has been followed in this case and that on motion to dismiss or set aside an information on the ground stated, this court has the right and should pass upon the information, or the information, evidence, and depositions in the Magistrate's Court, and if found insufficient to hold, as provided by law, then the information in this court, based thereon, should be dismissed, provided, of course, that where the circumstance warranted the court might instead direct defendant to avail himself of the remedy by demurrer or in arrest of judgment.

[7, 8] In reaching this conclusion the court is satisfied that such a determination does not operate as a bar to further prosecution. A discharge by a magistrate on a preliminary examination is not a bar to subsequent prosecution. Nor would the dismissal on motion of the district attorney, under section 743 of the Code, have any greater effect. People v. Dillon, 197 N. Y. 255, 90 N. E. 820, 18 Ann. Cas. 552. And by analogy neither would the setting aside of an information on motion of defendant for the reason urged in the case at bar. Then, too, by virtue of the provisions of the section of the Code under which this application is made, the court has power to direct that the case be resubmitted and to hold the defendant to bail.

We have reached the conclusion to grant the motion to set aside the information. It may be that the failure of proof, or pleading and proof, in the Magistrate's Court may be readily supplied. Therefore the court will grant the motion and, if the district attorney desires, direct that the case be resubmitted and hold the defendant to bail; otherwise, the motion will be granted and the defendant discharged.

MOSS and FORKER, JJ., concur.